**Vincent F. KULICK, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

No. 91–887.

United States Court of Veterans Appeals.

Submitted March 4, 1992.

Decided July 28, 1992.

Vincent F. Kulick, pro se.

Robert E. Coy, Acting General Counsel, Barry M. Tapp, Asst. General Counsel, Thomas A. McLaughlin, Deputy Asst. General Counsel, and Michael A. Leonard were on the pleadings for appellee.

Before FARLEY, HOLDAWAY and IVERS, Associate Judges.

HOLDAWAY, Associate Judge:

Appellant, Vincent F. Kulick, appeals a March 15, 1991, decision of the Board of Veterans' Appeals (BVA) which denied him entitlement to special monthly pension based on need for regular aid and attendance. The Court holds that the BVA did not err in finding appellant not entitled to the aid and attendance benefit. The decision of the BVA is affirmed.

## BACKGROUND

Appellant had qualifying military service from February to June 1943, and was found to be entitled to non-service-connected pension from 1971, under "old law" pension (pension laws in effect on or before December 31, 1978), and the aid and attendance benefit, in addition to pension, from 1976 to 1981. In 1981, several employees at the Veterans' Administration (now Department of Veterans Affairs) (VA) Outpatient Medical Center noticed that appellant was able to get to the Center by himself and walk about without assistance. They therefore questioned whether he was any longer in need of regular aid and attendance. He was given an examination by the VA on January 27, 1981, to determine entitlement to aid and attendance, and was found to be no longer qualified to receive the benefit. By a rating decision on March 9, 1981, he was terminated from aid and attendance. The VA continued, however, to pay him the aid and attendance benefit until 1989 when the error was found upon appellant's application to elect "improved" pension under new pension regulations. In response to his application for improved pension, the VA advised appellant, correctly, that it would be to his advantage to continue his pension under the "old law" because under the new law, he would receive no monthly monetary payments at all.

On October 11, 1989, the VA informed the veteran that as of October 1, 1989, his pension award, under the "old law" would be reduced. By a letter of February 11, 1990, the VA clarified that appellant had been found in 1981 to be no longer entitled to aid and attendance, but that aid and attendance benefits had been paid from 1981 to 1989 "due to an oversight." Appellant wrote to the VA expressing his disagreement with the reduction, stating that his physical condition had not changed and that he was entitled to continued aid and attendance. On April 3, 1990, the VA performed an examination to determine whether appellant was in need of regular aid and attendance sufficient to warrant awarding the aid and attendance benefit.

In a rating decision of May 31, 1990, the VA Regional Office found appellant was not shown to be housebound on a permanent basis and did not meet the requirements for aid and attendance. Appellant disagreed with this finding and appealed his claim to the BVA.

The BVA determined appellant did not qualify for aid and attendance.

## ANALYSIS

Veterans who were receiving or were entitled to receive pension under the laws in effect on or prior to December 31, 1978, have the right to continue such pension *if they are otherwise entitled.* 38 C.F.R. § 3.960 (1991). They also have the right to elect to receive pension under the new laws ("improved pension") if they so desire. 38 C.F.R. § 3.711 (1991). *See also* VA Adjudication Procedure Manual, M21–1, § 29.-08(a). Appellant continued to receive his pension under the laws in effect prior to December 31, 1978; however, his aid and attendance benefit was properly terminated when the VA found he was no longer entitled to the benefit.

Appellant labors under the mistaken belief that the VA terminated his "old law" pension benefits. The record reveals that appellant continues to receive his pension benefits under the old law, but that he was found to be no longer entitled to receive the additional special monthly benefit of aid and attendance as of 1981.

When the VA discovered appellant had been erroneously receiving the aid and attendance benefit from 1981 to 1989, it was obligated to terminate the overpayment. The BVA did not err, therefore, in treating appellant's claim as a new claim for present need of aid and attendance. The issue before this Court is whether the BVA erred in finding appellant is not presently entitled to aid and attendance.

Section 1521 of title 38 of the United States Code (formerly § 521) states that the Secretary of Veterans Affairs (Secretary) shall pay a pension to a veteran of a period of war (who meets the service requirements of 38 U.S.C. § 1521(j)) who is permanently and totally disabled by non-service-connected disabilities.

Need for aid and attendance is defined by the Secretary to be "helplessness or being so nearly helpless as to require the regular aid and attendance of another person." 38 C.F.R. § 3.351(b) (1991). The Secretary determines entitlement to the aid and attendance benefit under, inter alia, the following criteria:

> inability of claimant to dress or undress himself ..., or to keep himself ... ordinarily clean and presentable; frequent need of adjustment of any special prosthetic or orthopedic appliances which by reason of the particular disability cannot be done without aid ...; inability of claimant to feed himself ... through loss of coordination of upper extremities or through extreme weakness; inability to attend to the wants of nature; or incapacity, physical or mental, which requires care or assistance on a regular basis to protect the claimant from hazards or dangers incident to his or her daily environment. "Bedridden" will be a proper basis for the determination ... [Being bedridden] ... requires that the claimant remain in bed.... It is not *required that all of the disabling conditions enumerated in this paragraph be found to exist before a favorable rating may be made....* It is only necessary that the evidence establish that the veteran is so helpless as to need regular aid and attendance.... [Determinations] must be based on the actual requirement of personal assistance from others.

38 C.F.R. § 3.352(a) (1991). *See also* 38 C.F.R. § 3.351(a) (1991).

The BVA reviewed the April 3, 1990, VA examination for compensation and pension and the examination for "housebound status or permanent need for regular aid and attendance." On the compensation and pension examination, appellant was diagnosed with "anxiety and tension states as listed on request for physical exam." The examiner also noted appellant was "probably not" able to travel. The request for physical exam, which apparently provided a history as related by appellant, stated that

appellant had been treated since 1980 for headaches, dizziness, neck and shoulder pains, gallstones, hip and back pains, and nervous condition, and that he had received physical therapy for back, arms, and legs. He exercised regularly with a stationary bicycle and was a diabetic and experienced pain in his chest and stomach when he ate.

The examining physician on the aid and attendance examination noted that appellant's ability to leave the home on a daily or weekly basis was "variable" and that he receives physical therapy. The diagnosis was "hypochondria, anxiety state, tension state." The examining physician also gave his opinion that appellant was able to care for the needs of nature, feed, bathe, and dress himself, see adequately, get out of bed, remain out of bed all day, walk, get out of doors, and take exercise. He was found to be competent, but the examiner determined he would not be able to travel alone.

Appellant submitted to the BVA a letter, dated June 11, 1990, from his neighbor, who stated that appellant is physically incapable of taking care of his own needs. The neighbor stated that she shops and runs errands for appellant on a daily basis and sometimes ensures that he gets nourishment and aid when he is in bed incapable of helping himself.

Determinations regarding the extent of disability are factual determinations, and are reviewed by the Court under the "clearly erroneous" standard. *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990); *Lovelace v. Derwinski*, 1 Vet.App. 73, 74 (1990). If the decision of the BVA is plausible, then the Court cannot reverse the decision. *Gilbert*, 1 Vet.App. at 53.

After a review of the record, appellant's pro se brief, and the motion of the Secretary for summary affirmance, the Court holds that appellant has not demonstrated he is entitled to receive the special monthly pension of aid and attendance. The decision of the BVA is plausible, and the Court AFFIRMS the decision.