Anthony TURCO, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 95–305.

United States Court of Veterans Appeals.

July 2, 1996.

Anne D. Lopiano, Hyattsville, MD, and Neal T. Conway were on the brief, for appellant.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; Thomas A. McLaughlin, Deputy Assistant General Counsel; and John D. McNamee, Washington, DC, were on the brief for the appellee.

Before NEBEKER, Chief Judge, and KRAMER and IVERS, Judges.

KRAMER, Judge:

The appellant, Anthony Turco, appeals a March 27, 1995, decision of the Board of Veterans' Appeals (BVA or Board) which denied entitlement to special monthly pension (SMP) based on the need for regular aid and attendance or housebound status. The Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, the Court will affirm the Board's decision.

## I. FACTUAL BACKGROUND

The appellant had active military service with the United States Army from January 1951 to January 1953. Record (R.) at 16. His discharge examination did not reveal any abnormalities or disabilities. R. at 17–18. In August 1971, the appellant was injured in a job-related industrial accident. R. at 49. Apparently, the appellant has not worked since this accident. *See* R. at 51, 74. In September 1991, the appellant submitted an application for compensation or pension for a non-service-connected lower back condition. R. at 57–60. In February 1992, a VA regional office (RO) established a 40% schedular disability rating for the appellant's lower back problems. R. at 74–75. At this time, the RO made a determination that "[a]lthough the veteran's schedule evaluation does not show total disability, his age, lack of education, and current back condition make him incapable of substantially gainful employment." R. at 75. The RO, however, ultimately denied the appellant non-service-connected pension benefits because his annual family income exceeded the income limitation for pension benefits. R. at 77, 90.

In May 1992, the appellant submitted a VA Form 2680, Examination for Housebound Status or Permanent Need for Regular Aid and Attendance, which was completed and signed by Joe Kalangie, M.D., the appellant's private physician. R. at 79–80. In response to question 23 on the form, which asked the examiner to "[d]escribe restrictions of each upper extremity with particular reference to grip, fine movements, and ability for self feeding, to button clothing, shave and attend to the needs of nature," Dr. Kalangie reported that the appellant's "upper extremities ... were unremarkable." R. at 79. Although Dr. Kalangie did note that the appellant does have "difficulty doing his activities of daily living," he certified that daily skilled services were not needed. R. at 80. The RO treated this submission as a claim for an increased evaluation for the appellant's non-service-connected disability and entitlement to SMP. R. at 82, 84. In October 1992, the RO denied both claims. R. at 84. In November 1992, the appellant filed a Notice of Disagreement (R. at 86), and in January 1993 he filed an appeal to the BVA (R. at 93).

The BVA, in its decision here on appeal, denied entitlement to SMP based upon the need for regular aid and attendance of another person or at the housebound rate. R. at 6. The appellant filed a timely appeal.

## II. ANALYSIS

▇▇▇▇ The factual findings made by the BVA in this case are subject to the "clearly erroneous" standard of review. *See Kulick v. Derwinski,* 2 Vet.App. 640, 643 (1992); *Wood v. Derwinski,* 1 Vet.App. 190, 192 (1991). Under this standard, the Court can overturn the BVA decision only when there is no "plausible basis in the record" for the decision. *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990).

Section 1521 of title 38, United States Code, provides that "each veteran of a period of war who meets the service requirements of this section and who is permanently and totally disabled from non-service-connected disability not the result of the veteran's· willful misconduct" shall receive VA pension. 38 U.S.C. § 1521(a). Section 1521 further provides for an increased rate of pension, in the form of a SMP, when an otherwise eligible veteran is in need of regular aid and attendance (38 U.S.C. § 1521(d)), or has a disability rated as permanent and total and (1) has an additional disability or disabilities ratable at 60%, or (2) is permanently housebound (38 U.S.C. § 1521(e)). Section 1521 is implemented by provisions in the Code of Federal Regulations. *See* 38 C.F.R. § 3.351(b), (c), and (d) (1995).

### A. Aid and Attendance

Section 3.351(b) defines the need for aid and attendance as "helplessness or being so nearly helpless as to require the regular aid and attendance of another person." 38 C.F.R. § 3.351(b). Section 3.351(c), which is labeled "[a]id and attendance; criteria," establishes three alternative criteria that constitute helplessness. 38 C.F.R. § 3.351(c). Neither of the first two criteria under section 3.351(c) is applicable to this case because the first provision deals with situations where the claimant is legally blind, 38 C.F.R 3.351(c)(1), and the second provision deals with situations where the claimant is confined to "a nursing home because of mental or physical incapacity," 38 C.F.R 3.351(c)(2). The third criterion, 38 C.F.R. § 3.351(c)(3), directs consideration pursuant to section 3.352(a), which provides:

> The following *will be* accorded consideration in determining the need for regular aid and attendance (§ 3.351(c)(3)): inability of claimant to dress or undress himself (herself), or to keep himself (herself) ordinarily clean and presentable; frequent need of adjustment of any special prosthetic or orthopedic appliances which by reason of the particular disability cannot be done without aid (this will not include the adjustment of appliances which normal persons would be unable to adjust without aid, such as supports, belts, lacing at the back etc.); inability of claimant to feed himself (herself) through loss of coordination of upper extremities or through extreme weakness; inability to attend to the wants of nature; or incapacity, physical or mental, which requires care or assistance on a regular basis to protect the claimant from hazards or dangers incident to his or her daily environment.... *It is not required that all of the disabling conditions enumerated in this paragraph be found to exist before a favorable rating may be made. The particular personal function* which the veteran is unable to perform should be considered in connection with his or her condition as a whole. It is only necessary that the evidence establish that the veteran is so helpless as to need regular aid and attendance, not that there be a constant need.

38 C.F.R. § 3.352(a) (emphasis added).

▇▇▇▇ The Court notes the following. First, because the regulation provides that the "following" enumerated factors "will be accorded consideration," it is mandatory for the VA to consider the enumerated factors within the regulation. Second, because the regulation provides that "[i]t is not required that all of the disabling conditions enumerated in this paragraph be found to exist before a favorable rating may be made," the logical inference to be drawn from this language, although not explicitly stated, is that eligibility requires at least one of the enumerated factors be present. Third, because the regulation provides that "[t]he particular personal function which the veteran is unable to perform should be considered in connection with his or her condition as a whole," the logical inference to be drawn from this language, again although not explicitly stated, is that

the "particular personal function" refers to the enumerated factors. *Ibid.*

 Upon reviewing Dr. Kalangie's examination, the BVA determined:

> Although it was noted that the veteran would have difficulty attending to his daily activities, in view of the examination findings, it is apparent that the veteran would be able to dress and undress himself, keep himself ordinarily clean, attend to the wants of nature and protect himself from hazards or danger. Similarly, the evidence does not show that he needs assistance to frequently adjust any prosthetic or orthopedic appliance nor does it show that he is unable to feed himself as a consequence of his back disorder. He was described as well nourished.

R. at 10. Relying on section 3.352(a), the BVA denied entitlement to SMP based on a need for regular aid and attendance. R. at 11. The appellant's counsel argues that a remand is required in order for Dr. Kalangie to clarify his statement and provide in more detail what specific daily activities the appellant has difficulty accomplishing. Appellant's Reply Brief at 3. Although the Court agrees that Dr. Kalangie's report is somewhat ambiguous as to what daily living activities present difficulty, the Court notes: (1) the report was supplied by the appellant, (2) Dr. Kalangie certified that daily services were not needed, and (3) there is no indication in the record that any of the criteria listed in section 3.352(a) are present. As a consequence, the BVA's finding that the appellant does not need regular aid and attendance was plausible, and thus not clearly erroneous. *See Gilbert,* 1 Vet.App. at 53.

### B. Housebound Status

 A qualified veteran may receive SMP under the housebound rate pursuant to section 3.351(d) "if, *in addition to having a single permanent disability rated 100 percent disabling* under the Schedule for Rating Disabilities" the veteran either "(1) [h]as [an] additional disability or disabilities independently rated at 60 percent or more ... or (2)[i]s 'permanently housebound' by reason of disability or disabilities." 38 C.F.R. § 3.351(d)(1), (2) (emphasis added). Here,

the appellant's back condition (the only disability for which he is rated) is rated at 40% disabling under 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5295 (1995), the highest rating that may be assigned under this DC. R. at 74–75. A 100% rating for a spinal disorder is appropriate under the Schedule only where there has been vertebral fracture (residuals of which are manifested by cord involvement, the need to be bedridden, or by the need to wear long leg braces) (38 C.F.R. § 4.71a, DC 5285 (1995)), or an unfavorable complete bony fixation of the spine (38 C.F.R. § 4.71a, DC 5286 (1995)). Since there is no evidence in the record to indicate that the appellant has vertebral fracture of the spine or an unfavorable complete bony fixation of the spine, there is no basis upon which a 100% rating could be assigned under the Schedule. As a consequence, the BVA's conclusion that the appellant was not qualified to receive SMP under the housebound rate was plausible, and thus not clearly erroneous. *See Gilbert,* 1 Vet.App. at 53. In light of the appellant's inability to meet the threshold requirement of section 3.351(d), it is unnecessary for the Court to address the provisions of paragraph (d)(1) or (d)(2).

### III. CONCLUSION

Accordingly, the March 27, 1995, decision of the BVA is AFFIRMED.