# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 99-156

STEPHEN PREJEAN, APPELLANT,

V.

TOGO D. WEST, JR.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided  April 25, 2000   )

*Phill M. Edwards* and *Nolton J. Senegal, Sr.,* of Lafayette, La., were on the brief for the appellant.

*Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; *Joan E. Moriarty*, Acting Deputy Assistant General Counsel; and *Catherine A. Chase*, of Washington, D.C., were on the brief for the appellee.

Before FARLEY, HOLDAWAY, and GREENE, *Judges*.

HOLDAWAY, *Judge*: The appellant, Stephen Prejean, appeals an October 1998 decision of the Board of Veterans' Appeals (BVA or Board) which denied entitlement to special monthly compensation (SMC) based on the need for regular aid and assistance or for housebound status. The Court has jurisdiction of the case under 38 U.S.C. § 7252. Both parties have filed briefs. For the following reasons, the Court will affirm the decision of the Board.

## I.  FACTS

The appellant served on active duty in the U.S. Marine Corps from January 1968 to July 1969 and participated in combat action while stationed in Vietnam. In July 1993, the appellant was granted a 100% disability rating, effective in October 1988, for post-traumatic stress disorder (PTSD).

In February 1995, the appellant applied for SMC for his service-connected condition. The appellant stated that his treating physician, Dr. Morton, had informed him that he should not be left at home and that his wife had quit her job to remain at home with him. In May 1995, the appellant was afforded a VA examination for mental disorders. The medical findings supported a continued diagnosis of PTSD, but the examination report did not discuss his need for aid and attendance or housebound status. A June 1995 VA regional office (VARO) rating decision confirmed the appellant's 100% disability rating, but did not discuss the appellant's request for SMC.

A March 1996 Louisiana Department of Veterans Affairs medical examination performed by Dr. R.W. Osborn reported that the veteran had gouty arthritis in both knees. Because of his knee disability, he was unable to bathe himself, get out of bed, remain out of bed all day, or take exercise. The doctor also opined that the appellant may later be confined to a wheelchair.

In August 1996, the appellant submitted various documents to support his claim. A November 1993 VA prescription form stated, "[I]t is recommended that Mrs. Prejean stay with her husband for his health indefinitely." The prescription is signed by Dr. Morton, Chief of VA Mental Health Clinic, and by Dr. Osborn. A leave-without-pay form dated November 1993 indicated that the appellant's spouse had requested leave from her employment due to personal illness of her husband. She indicated that the appellant had PTSD and was to undergo therapy for his knee. She stated that the appellant's doctors did not want him to be left alone and had recommended that she stay home with him. In December 1996, the VARO denied the appellant's claim for SMC because the evidence did not show that the veteran was in need of regular aid and attendance or housebound status solely because of his service-connected condition.

In January 1997, the appellant filed a Notice of Disagreement with the VARO's decision to deny his claim for SMC. The appellant also submitted a January 1997 letter from Dr. Warren C. Lowe stating that he had treated the appellant for chronic PTSD since December 1995. Dr. Lowe described the appellant's symptomatology and stated, "Because of the severity of this veteran's condition, it was recommended by VA doctors in November 1993 that the patient's wife . . . quit her job so that she could be with him on a full-time basis." Dr. Lowe also opined, "His wife's continued presence in the home will be very beneficial, as she is a source of significant support and assistance to this chronically ill veteran."

2

In a January 1997 progress note, Dr. Morton wrote the following: "[Patient] applying for [aid and assistance] - [Patient] wife was advised that she needs to stay at home to supervise her husband due to his service[-]connected condition." In April 1997, the appellant was examined by VA doctors to determine if he was eligible for SMC. Dr. A. Thiruvengadam provided the appellant with a physical examination and opined, based on diagnoses of recurrent painful dermatitis of the lower leg and soles of the feet, right knee arthralgia, and lumbosacral strain with chronic recurrent lower back pain, that the appellant required regular aid and attendance.

The appellant also underwent a mental examination by Dr. Young. Dr. Young found that the appellant was functioning quite well and that his mood, affect, and conversation were normal. Dr. Young noted that Dr. Lowe had found that the appellant had chronic and persistent symptoms that included emotional numbing, social isolation, agitation, intrusive memories, nightmares, and hypervigilance. Dr. Young stated that he would concur that the veteran was probably having some of these symptoms, but that his testing suggested that the appellant may be exaggerating some of the symptoms. The appellant was found competent to manage his own finances, but Dr. Young stated that the appellant's "symptoms may be exacerbated where competency could be questioned during those episodes." In conclusion, Dr. Young stated, "[T]his examiner does not feel that this [sic] the veteran's condition would entitle him to special monthly compensation for aid and attendance or housebound care. That is, he was ambulatory and seemed able to take care of his daily needs adequately most of the time." In May 1997, the VARO issued to the appellant a Supplemental Statement of the Case denying his claim because while his non-service-connected conditions warranted aid and assistance, his service-connected PTSD did not.

In June 1997, the appellant filed a substantive appeal indicating that the 1997 VA mental examination did not adequately portray the debilitating nature of his PTSD. Along with his substantive appeal, the appellant submitted a May 1995 letter from Dr. J. Douglass Blair, who had been providing the appellant readjustment counseling since June 1994. Dr. Blair noted that in "[t]he past several months it has been verified that Mr. Prejean suffers from a full range of PTSD symptoms features[,] including intrusive thoughts, nightmares, etc." The doctor noted that the appellant continued to have significant impairment in several areas, which he described as follows:

Mr. Prejean's impairment involves strong avoidance of the public including the smallest of social gatherings. His ability to make decisions is severely limited and he suffers from [a] short attention span. His ability to organize thoughts even under the slightest stress is significantly impaired. Further, his memory as well as his ability to comprehend complex instructions are severely limited. In brief, simple responsibilities and obligations may be experienced by Mr. Prejean as stressful and result in an exacerbation of his symptoms.

. . . . Of special importance to Mr. Prejean's well-being is the continuing support of his wife. At the instruction of the [VA] physician, Mrs. Prejean quit her job in order to provide continuing ongoing daily care and supervision of her husband. This situation continues to be essential to Mr. Prejean's welfare.

The appellant's spouse wrote a letter to the VARO explaining that in November 1993 the appellant was found walking on a federal interstate highway because he wanted to be hit by a car. Mrs. Prejean stated that at that time the VA physicians had recommended that she stay home with the veteran. She stated that because of his memory loss, forgetfulness, and suicidal thoughts he was a danger to himself. For that reason, she resigned from her employment to care for the veteran. She also stated that someone must administer the veteran his medicine because he would forget or might overdose.

A January 1998 medical opinion of two VA psychiatrists, Drs. Beshara and Holtzclaw, found that the severity of the appellant's service-connected PTSD did not require the aid and attendance of another person. The doctors found that the appellant was oriented and alert, but that his affect was blunted. The appellant had suicidal ideation and some impairment of memory, concentration, and judgment. He had nightmares and heard voices several times a week. Also, reality testing may have been tenuous at times. Mr. Prejean stated that once the appellant almost started a fire once when he attempted to cook. Nonetheless, the VARO again denied the appellant's claim for SMC in July 1988.

On appeal, the Board determined that the appellant was not entitled to SMC because his PTSD was not "an incapacity which requires care or assistance on a regular basis to protect the claimant from hazards or dangers incident to his daily environment." The Board noted that the evidence of record indicated that the veteran's "private physicians" had recommended that the appellant's wife stay home to care for her husband. However, the Board stated the VA mental

4

examinations in 1997 and 1998 were more probative evidence that aid and assistance was not necessary. The Board found that (1) the VA examinations were more thorough, (2) the contrary findings of the appellant's private physicians were not persuasive, and (3) the VA examiners had the benefit of reviewing the appellant's claims file. Based on the VA medical examinations, the Board concluded that the appellant did not need regular aid and attendance. The Board also found that the appellant did not meet the regulatory definition for housebound status.

## II. ANALYSIS

The Board's determination regarding whether a veteran is entitled to SMC due to the need for regular aid and attendance or housebound status is a finding of fact that the Court reviews under the "clearly erroneous" standard of review. *See Turco v. Brown*, 9 Vet.App. 222, 224 (1996). "'A finding of fact is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed.'" *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). "[T]his Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA, . . . [the Court] cannot overturn them." *Id.* at 53.

The Board is also required to provide a written statement of reasons and bases for its decision on all material issues of fact and law. *See* 38 U.S.C. § 7104(d)(1); *Gilbert*, 1 Vet.App. at 57. The Board must also account for the evidence that it finds persuasive or unpersuasive and provide reasons for its rejection of material evidence that is favorable to the veteran's claim. *See Gabrielson v. Brown*, 7 Vet.App. 36, 39-40 (1994).

Special monthly compensation may be granted to veterans who are so disabled that they require regular aid and attendance or are housebound. *See* 38 U.S.C. § 1114(l); 38 C.F.R. § 3.350 (1998). In order to qualify to the special monthly compensation, a veteran must satisfy the requirements in 38 C.F.R. § 3.352(a):

> The following will be accorded consideration in determining the need for regular aid and attendance (§ 3.351(c)(3)[)]: inability of claimant to dress or undress himself (herself), or to keep himself (herself) ordinarily clean and presentable; frequent need of adjustment of any special prosthetic or orthopedic appliances which by reason of

5

the particular disability cannot be done without aid (this will not include the adjustment of appliances which normal persons would be unable to adjust without aid, such as supports, belts, lacing at the back, etc.); inability of claimant to feed himself (herself) through loss of coordination of upper extremities or through extreme weakness; inability to attend to the wants of nature; or incapacity, physical or mental, which requires care or assistance on a regular basis to protect the claimant from hazards or dangers incident to his or her daily environment. . . . . It is not required that all of the disabling conditions enumerated in this paragraph be found to exist before a favorable rating may be made. The particular personal functions which the veteran is unable to perform should be considered in connection with his or her condition as a whole. It is only necessary that the evidence establish that the veteran is so helpless as to need regular aid and attendance, not that there be a constant need. Determinations that the veteran is so helpless, as to be in need of regular aid and attendance will be based solely upon an opinion that the claimant's condition is such as would require him or her to be in bed. They must be based on actual requirement of personal assistance from others.

*Id*. In *Turco*, 9 Vet.App. at 225, the Court stated that it was mandatory that VA consider the factors under section 3.352(a) and that at least one of those factors must be present.

In this case, the appellant argues that there is clear evidence that the appellant's physicians recommended that his wife stay home to care for him indefinitely. This recommendation was written as a medical prescription in 1993 by Drs. Morton and Osborn. Based on subsequent medical records, Dr. Osborn was treating the appellant for his physical condition and Dr. Morton for his mental condition. Dr. Morton, who signed the 1993 prescription and was a VA physician, noted in January 1997, that the appellant's wife had been advised to stay home and care for the appellant due to his service-connected condition. In May 1995, Dr. Blair, who had been treating the appellant for almost a year, wrote a letter describing the severity of the appellant's PTSD. Dr. Blair also stated that it was "essential" to the appellant's well-being that his spouse provide him with ongoing daily care and supervision. Dr. Lowe, in January 1997, also noted that Mrs. Prejean had been advised to stay home and care for the veteran because of the severity of his mental condition. While Dr. Lowe did not opine that continued aid and assistance was necessary he stated that it would be "beneficial" to the appellant.

The Secretary has argued that the above recommendations were mere recitations of what the appellant had reported, and under *LeShore v. Brown*, 8 Vet.App. 406 (1995), such transcriptions do not carry probative weight. The Secretary has also argued that the original prescription is not

probative because it does not indicate whether Mrs. Prejean's assistance was necessary because of the appellant's PTSD or physical disabilities. However, the fact that Dr. Morton signed the original prescription that Mrs. Prejean stay home and care for the appellant, and subsequently in 1997 stated that again that Mrs. Prejean should stay home to care for the veteran due to his service-connected condition, undermines both arguments. Obviously, the appellant has submitted evidence that he needs aid and assistance for his physical disabilities. Medical reports from 1996 and 1997 stated that such assistance was necessary. However, the previously discussed medical evidence also supports the fact that the appellant was in need of aid and assistance because of his mental disabilities.

In this case, the Board relied on the 1997 VA medical report and the 1998 medical opinion of two VA psychiatrists to deny the appellant's claim for SMC. Therefore, the Board found that there is evidence both for and against the appellant's claim. The Board found that the 1997 and 1998 VA medical opinions were more probative than the evidence in support of the appellant's claim. The Board determined that the 1997 and 1998 opinions were more probative because they were more thorough and detailed, they discussed why the opinions in support of the appellant's claims were not persuasive, and the fact that the VA medical examiners had access to the appellant's claims file.

After a review of the record on appeal and consideration of the arguments made by the parties, the Court finds that certainly there is substantial evidence both for and against the appellant's claim. However, the Board found that the preponderance of the evidence was against a finding that the appellant required aid and attendance solely on account of his service-connected mental condition. Furthermore, the Board supported its conclusion with an adequate statement of its reasoning of why it found the medical opinions which concluded that the appellant did not need aid and attendance on account of his mental condition more probative than the opinions which concluded that he did. While the Court is certainly sympathetic to the arguments made by the appellant, such sympathy by itself does not permit us to substitute our judgment of the facts for that of the primary fact finder. Because the Court finds that there is a plausible basis in the record for the Board's decision, it must be affirmed.

## III.  CONCLUSION

The Court holds that the appellant has not demonstrated that the Board committed either legal or factual error which would warrant reversal or remand.  The decision of the Board is AFFIRMED.