Citation Nr: 1334639 
Decision Date: 10/30/13 Archive Date: 11/06/13

DOCKET NO. 10-12 266 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUE

Entitlement to special monthly compensation based on the need for aid and attendance, or being housebound.


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

M. G. Mazzucchelli, Counsel



INTRODUCTION

The Veteran served on active duty from December 1977 to December 1982. He died in February 2011; the appellant is the Veteran's surviving spouse. Her request to be substituted as the claimant for the purposes of processing this appeal to completion was granted by the Regional Office (RO) in March 2011.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a January 2009 rating decision of the Nashville, Tennessee, Department of Veterans' Affairs (VA) RO. 


FINDINGS OF FACT

1. The Veteran died in February 2011 during the pendency of this appeal, and his widow filed a timely request to be substituted as the appellant in his place.

2. At the time of the Veteran's death, service connection was in effect for bipolar disorder, rated 100 percent disabling since July 14, 1999. 

3. The preponderance of the evidence of record is against a finding that the Veteran's service-connected bipolar disorder rendered him so helpless as to require the regular aid and attendance of another person to perform personal care functions of everyday living or to protect himself from the hazards and dangers incident to the daily environment. 

4. Although the Veteran had a single service-connected disability rated as 100 percent disabling, he was not service-connected for any other disabilities, and was not shown to be permanently housebound as a result of his service-connected disability. 


CONCLUSION OF LAW

The criteria for an award of special monthly compensation based upon the need for the regular aid and attendance of another person or due to housebound status have not been met. 38 U.S.C.A. §§ 1114, 1502(c), 1521(e), 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.159, 3.350, 3.351(d), 3.352 (2013). 


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Notice and Assistance

Upon receipt of a complete or substantially complete application, VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. VA must notify the claimant of the information and evidence not of record that is necessary to substantiate a claim, which information and evidence VA will obtain, and which information and evidence the claimant is expected to provide.

The Veteran and the appellant have been provided notice with respect to the issue on appeal in letters dated in September 2008 and May 2011. The letters advised the Veteran and the appellant of the elements required to establish entitlement to SMC. The claim was subsequently readjudicated, most recently in a December 2012 supplemental statement of the case.

Effective October 10, 2008, the law was changed concerning substitution in the case of the death of a claimant. The newly revised statute provides that, "If a claimant dies while a claim for any benefit under a law administered by the Secretary, or an appeal of a decision with respect to such a claim, is pending, a living person who would be eligible to receive accrued benefits due to the claimant under § 5121a of this title may, not later than one year after the date of the death of such claimant, file a request to be substituted as the claimant for the purposes of processing the claim to completion." 38 U.S.C.A. § 5121A. Unlike an accrued benefits claim, the record is not closed on the date of death of the original claimant, but remains open for submission and development of any pertinent additional evidence. See VA Fast Letter 10-30 August 2010. 

VA has obtained service treatment records, VA treatment records, private medical records, and VA examination reports. VA also assisted the Veteran and the appellant in obtaining evidence, including a VHA medical opinion. Neither the Veteran nor the appellant has indicated, and the record does not contain evidence, that the Veteran was in receipt of disability benefits from the Social Security Administration (SSA). All known and available records relevant to the issue on appeal have been obtained and associated with the Veteran's claim file and neither he nor the appellant has contended otherwise. 38 U.S.C.A. § 5103A, 38 C.F.R. § 3.159. 

There is no indication in the record that any additional evidence, relevant to the issue decided, is available and not part of the claim file. See Pelegrini v. Principi, 18 Vet. App. 112 (2004). As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of the case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 20 Vet. App. 537 (2006); see also Dingess, 19 Vet. App. at 486; Shinseki v. Sanders, 129 S. Ct. 1696 (2009). Accordingly, the appellant is not prejudiced by a decision at this time.

Special Monthly Compensation

SMC is payable at a specified rate if the veteran, as the result of service-connected disability, is in need of regular aid and attendance. Need for aid and attendance means helplessness or being so nearly helpless as to require the regular aid and attendance of another person. A veteran will be considered to be in need of regular aid and attendance if he or she is blind or is so nearly blind as to have corrected visual acuity of 5/200 or less, in both eyes, or concentric contraction of the visual field to 5 degrees or less; if the veteran is a patient in a nursing home because of mental or physical incapacity; or if the evidence establishes a factual need for aid and attendance or "permanently bedridden" status under the criteria set forth in 38 C.F.R. § 3.352(a). See 38 U.S.C.A. § 1114(l) (West 2002); 38 C.F.R. § 3.351(b) (2013).

The following will be accorded consideration in determining the need for regular aid and attendance: inability of claimant to dress or undress himself, or to keep himself ordinarily clean and presentable; frequent need of adjustment of any special prosthetic or orthopedic appliances which by reason of the particular disability cannot be done without aid [this will not include the adjustment of appliances which normal persons would be unable to adjust without aid, such as supports, belts, lacing at the back, etc.]; inability of claimant to feed himself through loss of coordination of upper extremities or through extreme weakness; inability to attend to the wants of nature; or incapacity, physical or mental, which requires care or assistance on a regular basis to protect the claimant from hazards or dangers incident to his or her daily environment. "Bedridden" will be a proper basis for the determination. See 38 C.F.R. § 3.352(a) (2013).

A veteran will be found to be bedridden if the condition actually requires that he remain in bed, but not if he voluntarily stays in bed or if a physician merely recommends bed rest. 

It is not required that all of the disabling conditions enumerated in this paragraph be found to exist before a favorable rating may be made. The particular personal functions that the veteran is unable to perform should be considered in connection with his or her condition as a whole. It is only necessary that the evidence establish that the veteran is so helpless as to need regular aid and attendance, not that there be a constant need. Determinations that the veteran is so helpless as to be in need of regular aid and attendance will not be based solely upon an opinion that the claimant's condition is such as would require him or her to be in bed. They must be based on the actual requirement of personal assistance from others. Id. 

Although a veteran need not show all of the disabling conditions identified in 38 C.F.R. § 3.352(a) to establish entitlement to aid and attendance, it is logical to infer there is a threshold requirement that "at least one of the enumerated factors be present." See Turco v. Brown, 9 Vet. App. 222, 224 (1996).

The performance of the necessary aid and attendance service by a relative of the beneficiary or other member of his or her household will not prevent the granting of the additional allowance. 38 C.F.R. § 3.352(c) (2013).

Special monthly compensation can also be payable at a specified rate if a veteran, as the result of service-connected disability, has one service-connected disability rated as 100 percent disabling and a separate disability rated at 60 percent or higher or is permanently housebound. The veteran will be found to be permanently housebound if, due to service-connected disabilities, he is substantially confined to his home or the immediate premises or, if institutionalized, to the ward or clinical areas, and it is reasonably certain that such confinement will continue throughout his lifetime. 38 U.S.C.A. § 1114(s) (West 2002); 38 C.F.R. § 3.350(i) (2013).

Aid and Attendance

At the time of his death in February 2011, the Veteran was service-connected for only one disability; bipolar disorder rated 100 percent disabling, effective July 14, 1999. For SMC based on aid and attendance to be awarded, the evidence of record must show that the service-connected bipolar disorder rendered him so helpless as to require the regular aid and attendance of another person. See 38 U.S.C.A. § 1114(l) (West 2002).

Neither the appellant nor the Veteran [prior to his death] has contended or demonstrated that the Veteran had a visual impairment to the extent that he was blind or nearly blind, or that he was a patient living in a nursing home, and the evidence of record does not so suggest. As such, analysis will focus on whether there is a factual need for aid and attendance under the criteria set forth in 38 C.F.R. § 3.352(a). See 38 U.S.C.A. § 1114(l) (West 2002); 38 C.F.R. § 3.351(b).

The appellant contends that, prior to his stroke in April 2008, the Veteran was in need of aid and attendance due to his service connected bipolar disorder. She notes that a January 2001 VA examiner had found the Veteran not competent for VA purposes, and that fact alone should indicate that he required aid and attendance. Alternatively, she contends that symptoms of the Veteran's service connected bipolar disorder led him to stop taking medications which then resulted in his stroke. 

VA found that the Veteran was not competent to handle disbursement of funds based on a January 2001 VA examination report that noted that the Veteran "has a long history of emotional lability, poor judgment, and difficulties establishing and maintaining relationships and therefor should not be considered competent for VA purposes." This examiner also noted that the Veteran "provides his routine self care." 

In 2006 the Veteran suffered a left middle cerebral artery stroke that resulted in some right-sided weakness and inability to swallow. In June and July 2007 the Veteran was hospitalized for manic episodes and his medication was adjusted. At the time of the discharge from the July 2007 hospitalization, a Global Assessment of Functioning (GAF) score of 60-70 was assigned. 

A GAF rating is a scale reflecting the psychological, social, and occupational functioning on a hypothetical continuum of mental-health illness. Richard v. Brown, 9 Vet. App. 266, 267 (1996), citing Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994). A higher GAF score reflects less impairment.

A GAF of 51 to 60 is defined as moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). A GAF score of 61 to 70 indicates the examiner's assessment of some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well and having some meaningful interpersonal relationships.

In April 2008 the Veteran suffered a second stroke, which left him unable to move his right upper extremity, restricted movement of his right leg, and caused significant expressive aphasia. He subsequently filed his claim for SMC. 

An August 2007 VA treatment record listed the Veteran's current medications as Divalproex, Hydroxyzine pramoate, Ibuprofen, Lithium, Olanzapine, Rosuvastatin, and aspirin. An April 2008 private hospitalization report noted that the Veteran was "placed back on his Lithium, which was being used for bipolar disorder. Of note, his lithium level on admission was absent; therefore questioning compliance of medications, including the antiplatelet medications and other medications that he was supposedly taking on admission, including a statin medication." 

A July 2008 VA examiner found that the Veteran required the care of another person in the home with him due to his need for help with preparing meals, bathing, and dressing as a result of his stroke. The examiner also noted aphasia secondary to his stroke. The examiner stated that the Veteran apparently could only leave his house for medical reasons. The Veteran was noted to be in a lot of pain and also "dealing with depression and not sleeping very well. Also, has a history of bipolar."

In July 2013, the Board obtained an opinion from a VHA psychiatrist. After review of the Veteran's claim file, he stated that:

[T]he Veteran's service connected bipolar disorder, alone, did not result in mental incapacity which required care or assistance on a regular basis to protect him from hazards or dangers incident in his daily environment.

I considered the following facts when forming my opinion. 

In 2001, the Veteran was considered incompetent to manage his VA funds. This opinion/decision did not indicate that the Veteran was in need of home health care or protection from hazards or dangers in his daily environment. Many Veterans who require a payee to manage their funds live independently. In fact, the examiner who determined that this Veteran was incompetent to manage his funds also stated that he needed no assistance with Activities of Daily Living.

In 2007, the Veteran was released from a hospitalization and assigned a Global Assessment of Function of 60-70, which would indicate the ability to function independently in the home.

In 2008, Dr. [D.C.], Ph.D. diagnosed the patient with Cognitive Disorder, [not otherwise specified], secondary to his CVA in 2006. If any evidence could be found indicating that the Veteran required home based assistance, his physical and cognitive deficits from his CVA in 2006 would more likely than not have been the reason, not his bipolar disorder.

I think it is very important to note that in general there are very few circumstances where psychiatric diagnoses cause symptoms that would cause an individual to require home health care. Severe dementia would be one such example. I have never known of a patient with bipolar disorder requiring home health care for his bipolar disorder.

I would also like to address the following quote from the case, "Of note, his lithium level on admission was absent; therefore questioning compliance of medications, including the antiplatelet medications and other medications that he was supposedly taking on admission, including a statin medication."

The quote was taken from a discharge summary. However, it seems to have ignored facts documented elsewhere in the record. The physician completing the initial exam documented that the patient reported compliance with both his aspirin and Plavix, while noting he has not taken lithium for several days. His blood work showed that his TSH and thyroid levels were within normal range, indicating he had been compliant with his levothyroid. His Urine Drug Screen was positive for opiates, which is either indicative of compliance with pain medications or opiate abuse. Since that patient honestly reported that he was not taking lithium, I see no reason to believe he was lying about properly taking his aspirin and Plavix, particularly when there is evidence in the blood and urine samples that he was compliant with several of his medications.

A factual need for aid and attendance is established by the lay and medical evidence of record dating from April 2008 to the time of the Veteran's death in February 2011. However, the evidence of record does not suggest that such need for aid and attendance resulted from debilitating effects of his service-connected bipolar disorder, but rather from the effects of his nonservice-connected stroke residuals. 

The January 2001 VA examination found that the Veteran was able to provide his routine self care. While the Veteran was considered incompetent to manage his VA funds in 2001, as noted by the VHA psychiatrist, "this opinion/decision did not indicate that the Veteran was in need of home health care or protection from hazards or dangers in his daily environment. Many Veterans who require a payee to manage their funds live independently." 

A GAF score of 60-70 was assigned in July 2007. The VHA psychiatrist indicated that this score "would indicate the ability to function independently in the home." 

On a July 2008 VA examination report, the examiner found that the Veteran required the care of another person in the home with him due to his need for help with preparing meals, bathing, and dressing as a result of his stroke that occurred in April 2008. While this examiner referred to the Veteran as "dealing with depression and not sleeping very well. Also, has a history of bipolar," there was no finding that his bipolar disorder alone required care or assistance on a regular basis to protect him from hazards or dangers incident to his daily environment.

As to the appellant's contention that the Veteran's service connected bipolar disorder led him to stop taking medications which then resulted in his stroke, the VHA psychiatrist found that the April 2008 notation questioning the Veteran's drug compliance was undercut by the Veteran's own report that while he had not been compliant with his lithium he had been taking aspirin and Plavix, as well as the drug and urine testing demonstrating that he was current with his medications for pain and thyroid disease. The VHA psychiatrist found "no reason to believe he was lying about properly taking his aspirin and Plavix." 

The Board has considered the appellant's statements in support of the claim. However, her contentions regarding the Veteran's need for aid and attendance prior to his April 2008 stroke are contradicted by the medical records that demonstrate that he was able to attend to his daily needs and to remain compliant with his medications. Likewise, her contentions regarding the Veteran's medication compliance are outweighed by the medical opinion evidence of the VHA psychiatrist who provided a convincing rationale for his determination that the Veteran had been compliant with his Plavix and aspirin regimen prior to his debilitating April 2008 stroke.

While it is clear that a factual need for aid and attendance is demonstrated by the record from April 2008 through the final years of the Veteran's life, the preponderance of the evidence favors a finding that such a need for aid and attendance resulted from the Veteran's stroke residuals, and not from the Veteran's service-connected bipolar disorder. 

The preponderance of the evidence of record is against a finding that the Veteran's service-connected bipolar disorder rendered him so helpless as to require the regular aid and attendance of another person to perform personal care functions of everyday living or to protect himself from the hazards and dangers incident to the daily environment. As such, entitlement to SMC based on a need for aid and attendance is not warranted. See 38 U.S.C.A. § 1114(l) (West 2002).

Housebound Status

As noted in the law and regulations above, SMC can also be payable at a specified rate if a veteran, as the result of service-connected disability, has one service-connected disability rated as 100 percent disabling and a separate disability rated at 60 percent or higher, or he is permanently housebound. The veteran will be found to be permanently housebound if, due to his service-connected disabilities, he is substantially confined to his home or the immediate premises or, if institutionalized, to the ward or clinical areas, and it is reasonably certain that such confinement will continue throughout his lifetime. 38 U.S.C.A. § 1114(s) (West 2002); 38 C.F.R. § 3.350(i).

Although the Veteran had one service-connected disability rated as 100 percent disabling at the time of his death, the Veteran received no compensation from VA for any other service-connected disability. Thus, SMC may not be awarded based on disability ratings alone, per the provisions of 38 C.F.R. § 3.350(i)(1). 

Additionally, the evidence does not show that the Veteran's service-connected bipolar disorder resulted in his being housebound per the provisions of 38 C.F.R. § 3.350(i)(2), and the appellant does not so assert. The July 2008 VA examination report, following the Veteran's April 2008 stroke, noted that the Veteran was "at home most of the time, except for medical appointments." On review, the overall evidence does not show that the Veteran was restricted to his domicile as a result of his service connected bipolar disorder. SMC at the housebound rate is not warranted.

The benefit of the doubt rule has been considered but, as the preponderance of the evidence is against the claim, there is no basis to apply it. See 38 U.S.C.A. § 5107 (West 2002); 38 C.F.R. § 3.102. 


ORDER

Entitlement to special monthly compensation based on the need for aid and attendance, or being housebound, is denied.





____________________________________________
RONALD W. SCHOLZ
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs