﻿Citation Nr: AXXXXXXXX
Decision Date: 05/29/20 Archive Date: 05/29/20

DOCKET NO. 191112-42853
DATE: May 29, 2020

ORDER

Special monthly compensation (SMC) based on the need for regular aid and attendance of another person is granted, subject to the laws and regulations governing the payment of monetary benefits.

SMC based on housebound criteria is denied.

FINDINGS OF FACT

1. The Veteran’s service-connected disabilities render him in need of regular aid and attendance of another person.

2. The Veteran does not have a service-connected disability rated as totally disabling and does not have a total disability rating based on individual unemployability (TDIU) based upon one service-connected disability.

CONCLUSIONS OF LAW

1. The criteria for SMC based on the regular aid and attendance of another person are met. 38 U.S.C. §§ 1114(l), 5107 (2012); 38 C.F.R. § §§ 3.102, 3.350, 3.352(a) (2019). 

2. The criteria for entitlement to SMC based on housebound criteria have not been met. 38 U.S.C. §§ 1114(s), 5107 (2012); 38 C.F.R. §§ 3.102, 3.350, 4.16 (2019). 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from May 1970 to February 1972. This matter is before the Board of Veterans’ Appeals (Board) on appeal from March and September 2019 rating decisions of a Department of Veterans Affairs (VA) Regional Office (RO), which was issued under the Appeals Modernization Act (AMA). 

On August 23, 2017, the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified across 38 U.S.C.), 131 Stat. 1105 (2017), also known as the AMA, was signed into law. In March 2019, the Agency of Original Jurisdiction (AOJ) denied the Veteran’s claim seeking entitlement to SMC based on aid and attendance and housebound criteria. The Veteran requested Higher Level Review by the AOJ of the decision denying SMC based on housebound criteria in August 2019, and the September 2019 rating decision was issued. The Veteran then appealed to the Board and requested Direct Review of the evidence considered by the AOJ in November 2019. 

The Board notes that in December 2018, the Veteran originally filed a claim seeking “aid and attendance” and the March 2019 rating decision addressed SMC based on aid and attendance and housebound criteria. In the August 2019 Decision Request: Higher Level Review (VA Form 20-0996), the Veteran specified that he was requesting a higher-level review of the issue of entitlement to SMC “based on housebound,” but also indicated that “there was no way to leave this dwelling without substantial help.” The RO then issued the September 2019 rating decision, only adjudicating the issue of entitlement to SMC based on housebound criteria. The Veteran indicated on his November 2019 Decision Review Request: Board Appeal that he was appealing the issue of entitlement to SMC based on aid and attendance and housebound, but only listed the September 2019 decision as being appealed. It is evident from the paperwork filed by the Veteran that he was intending to seek entitlement to SMC both based on aid and attendance of another and based on housebound criteria, therefore, the Board finds that the issue on appeal is entitlement to SMC based on the aid and attendance of another person and/or housebound criteria and that both the March 2019 and September 2019 rating decisions are on appeal. 

SMC

The Veteran seeks entitlement to SMC based on the need for regular aid and attendance of another person. Under 38 U.S.C. § 1114(l), SMC based on the need for aid and attendance is payable if, as the result of service-connected disability, the Veteran has suffered: (1) anatomical loss or loss of use of both feet; (2) anatomical loss or loss of use of one hand and one foot; (3) blindness in both eyes with visual acuity of 5/200 or less; (4) being permanently bedridden; or (5) being so helpless as to be in need of regular aid and attendance. 38 U.S.C. § 1114(l); 38 C.F.R. §§ 3.350(b).

To be deemed so helpless as to be in need of regular aid and attendance, there must be at least one of the following: (1) an inability to dress or undress or to keep ordinarily clean and presentable independently; (2) frequent need of adjustment of any special prosthetic or orthopedic appliances which by reason of the particular disability cannot be done without assistance; (3) an inability to feed independently through loss of coordination of upper extremities or through extreme weakness; (4) an inability to attend to the wants of nature; or (5) incapacity, either physical or mental, that requires care or assistance on a regular basis to protect from hazards or dangers incident in the daily environment. 38 C.F.R. § 3.352(a); Turco v. Brown, 9 Vet. App. 222 (1996). Being bedridden also is a proper basis for such a determination. 38 C.F.R. § § 3.352(a). The need for aid and attendance does not have to be constant. Id. 

Determinations that the veteran is so helpless, as to be in need of regular aid and attendance will not be based solely upon an opinion that the claimant’s condition is such as would require him or her to be in bed. They must be based on the actual requirement of personal assistance from others. Id. The critical question to be determined is whether the Veteran’s service-connected disabilities resulted in the need for regular aid and attendance of another person because of resultant helplessness due to physical impairment. 

VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination, the benefit of the doubt is afforded to the claimant.

The record here does not show, and the Veteran does not allege, that he was blind or nearly blind or that he was a patient in a nursing home because of mental or physical incapacity. Likewise, the Veteran was not permanently bedridden as the record reflects that he travelled beyond his domicile for medical appointments.

The Veteran is service-connected for posttraumatic stress disorder, peripheral neuropathy involving the median and ulnar nerves of the right upper extremity associated with diabetes mellitus, type II, peripheral neuropathy involving the median and ulnar nerves of the left upper extremity associated with diabetes mellitus, type II, diabetes mellitus, type II, peripheral neuropathy of the sciatic nerve of the right lower extremity associated with diabetes mellitus, type II, peripheral neuropathy of the sciatic nerve of the left lower extremity associated with diabetes mellitus, type II, peripheral neuropathy of the femoral nerve of the right lower extremity associated with diabetes mellitus type II, peripheral neuropathy of the femoral nerve of the left lower extremity associated with diabetes mellitus type II, tinnitus, and bilateral hearing loss. 

An April 2014 Diabetic Sensory-Motor Peripheral Neuropathy VA examiner indicated that the Veteran had numbness and tingling in his feet and toes. The examiner stated that the Veteran had difficulty walking for prolonged periods. 

In a June 2017 VA Diabetic Sensory-Motor Peripheral Neuropathy disability benefits questionnaire (DBQ), it was noted that the Veteran had a limited ability to ambulate. 

An August 2017 Diabetes Mellitus VA examiner indicated that the Veteran could not do physical activities as it would result in hypoglycemia. The Veteran could not walk for long periods also. 

An August 2017 Diabetic Sensory-Motor Peripheral Neuropathy VA examiner indicated that the Veteran had pain, tingling, and numbness to the legs and hands. He used a cane constantly and could not walk for long periods.

An August 2017 VA PTSD examiner noted that the Veteran complained of high levels of anxiety which was invasive and intrusive to the point that it was negatively impacting him, including his decision-making abilities and impulse control. 

VA treatment records from March 2017 indicate worsening neuropathy. August 2017 VA treatment records note that the Veteran had fallen several times. In November 2018, the Veteran stated that his daughter took him to his appointments and helped him with his medications. 

A December 2018 aid and attendance DBQ noted that the Veteran’s neuropathy made the Veteran require assistance in bathing and tending to hygiene, in that he could not wash or reach his legs and feet. He could feed himself and prepare his own meals. He required assistance with hygiene, needed help taking and preparing his daily medications, and needed help managing and keeping track of monthly payments and financial affairs. Restrictions of upper extremity included guarded range of motion in the right shoulder. He had lower extremity weakness restrictions in the knees and sat for most of the day. He was able to leave the home 2 to 3 times daily. Aids were required for locomotion and the Veteran could only travel 60 to 70 feet and then required rest. The diagnosis was neuropathy aggravated by diabetes.

In January 2019 VA treatment records the Veteran indicated that one of his daughters was moving in with him and would be his caregiver because he needed help. 

A February 2019 Diabetes Mellitus VA examiner indicated that because of the Veteran’s diabetes symptoms and neuropathy he should not drive or be exposed to heights or other hazardous environments. 

A February 2019 Diabetic Sensory-Motor Peripheral Neuropathy VA examiner indicated that the Veteran dropped “everything” multiple times a day, needed help with aspects of dressing such as putting on shoes. He fell 2 to 3 times a month despite using a cane and could not get up without assistance. The examiner described the Veteran’s gait as slow and careful, and he used a cane because lower extremity neuropathy affected balance. He was also examined in a chair due to the risks of having him maneuver up onto the exam table even with assistance. The examiner stated that neuropathy allowed only a limited degree of use of his hands, including writing and handling of small objects.

Following a review of the evidence, the Board concludes that the evidence is at least in equipoise that the Veteran has needed regular aid and attendance of another person due to his service-connected neuropathies, diabetes mellitus, type II, and PTSD. The VA examination reports and VA treatment records indicate that the Veteran had frequent falls and had to walk with a cane due to balance and stability issues and needed help getting up when he fell. He also needed assistance with his hygiene, help dressing, help with his medications, and needed help managing and keeping track of monthly payments and financial affairs. He also could not drive and could not ambulate for long periods. 

The Board notes that the April 2014 Diabetic Sensory-Motor Peripheral Neuropathy VA examiner, June 2017 VA Diabetic Sensory-Motor Peripheral Neuropathy DBQ provider, and August 2017 Diabetes Mellitus VA examiner indicated that the Veteran only had difficulty walking for prolonged periods and an inability to do physical activities. However, the evidence demonstrates that the Veteran’s need for regular aid and assistance is based on his symptoms such as his frequent falls, balance and stability issues, assistance with his hygiene, help dressing, help with his medications, and inability to ambulate for long periods, which have been attributed to his service-connected neuropathies and diabetes mellitus. 

In considering the evidence above, the Board finds the evidence is at least in equipoise and resolves any reasonable doubt in favor of the Veteran and finds that the criteria for entitlement to SMC based on the need for aid and attendance of another person have been met. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.

With regard to SMC based on housebound criteria, while SMC based on aid and attendance is a greater benefit than SMC at the housebound rate, concurrent awards are not precluded by law. Here, however, he does not meet the requirements for being “housebound in fact” as there is no indication that he is substantially confined to his home and he is not institutionalized due solely to service-connected disability(ies). 

He also does not meet the requirements for being “statutorily housebound.” Such an award is possible where there is a single disability rated as total, and a separate disability(ies) that amount to 60 percent. 38 U.S.C. § 1114(s). A TDIU rating can qualify for compensation at the 38 U.S.C. § 1114(s) rate, so long as the TDIU is based on a single disability. Bradley v. Shinseki, 22 Vet. App. 280, 293 (2008). However, while the Veteran has separate disabilities that amount to 60 percent, he does not have a single disability rated as total and has not been granted a TDIU. Because the Veteran does not have a service-connected disability rated at 100 percent, SMC based on housebound status is not warranted. 

 

 

M. SORISIO

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Bonnie Yoon, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.