Citation Nr: 1434256 
Decision Date: 07/31/14 Archive Date: 08/04/14

DOCKET NO. 14-08 743 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUES

1. Entitlement to an effective date prior to December 2, 2012 for the award of special monthly compensation (SMC) based on aid and attendance, housebound status. 

2. Entitlement to an effective date prior to March 31, 1985 for the award of a total disability rating due to individual unemployability (TDIU). 

(The Veteran's motion to revise a January 2001, a July 2008, and an August 2010 Board decisions on the basis of clear and unmistakable error (CUE) are the subject of a separate decision.)


ATTORNEY FOR THE BOARD

J. Murray, Counsel 




INTRODUCTION

The Veteran served on active duty from May 1950 to June 1952. 

These matters come on appeal before the Board of Veterans' Appeals (Board) from a January 2013 and a February 2013 rating decisions by the Department of Veterans Affairs, Regional Office, located in Montgomery, Alabama (RO). In the January 2013 rating decision, the RO awarded entitlement to special monthly compensation based on the need for aid and attendance, and in the February 2013 rating decision, the RO assigned an earlier effective date of March 31, 1985 for the award of TDIU. The Veteran appealed the assigned effective dates. 

In evaluating this case, the Board has not only reviewed the Veteran's physical claims file, but has also reviewed the Veteran's file on the "Virtual VA" system to ensure a complete assessment of the evidence.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2002).


FINDINGS OF FACT

1. Prior to March 31, 1985, it was not factual ascertainable the Veteran's service-connected disabilities render him preclude him from securing or following substantially gainful employment. 

2. On July 9, 2012, VA received the Veteran's claim for entitlement to increased rating for his service-connected sciatic nerve disability, which included an inferred claim for special monthly compensation based on the need of aid and attendance. 

3. The preponderance of the evidence is against a finding that prior to July 9, 2012 the Veteran required aid and attendance because of his service-connected disabilities. 

CONCLUSIONS OF LAW

1. The criteria for an earlier effective date than March 31, 1985, for the award of TDIU have not been met. 38 U.S.C.A. § 5110 (West 2002); 38 C.F.R. §§ 3.151, 3.155, 3.400 (2013).

2. The criteria for effective date of July 9, 2012, and not earlier, for the award of special monthly compensation based on the need of aid and attendance have been met. 38 U.S.C.A. § 5110 (West 2002); 38 C.F.R. §§ 3.151, 3.155, 3.400 (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

VA's Duty to Notify and Assist 

The Veterans Claims Assistance Act of 2000 (VCAA), codified in part at 38 U.S.C.A. §§ 5103, 5103A, and implemented at 38 C.F.R. § 3.159, amended VA's duties to notify and assist a claimant in developing the information and evidence necessary to substantiate a claim.

When the VA receives a complete or substantially complete application for benefits, the VCAA requires the VA to notify the claimant of the information and evidence not of record that is necessary to substantiate the claim. VA will inform the veteran, which information and evidence VA will seek to provide, and which information and evidence the claimant is expected to provide. 38 C.F.R. § 3.159(b). VA must provide such notice to the claimant prior to an initial unfavorable decision on a claim for VA benefits by the agency of original jurisdiction (AOJ), even if the adjudication occurred prior to the enactment of the VCAA. See Pelegrini v. Principi, 18 Vet. App. 112, 119-120 (2004). VA must also provide the Veteran with notice that a disability rating and an effective date will be assigned if service connection is awarded. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

In this case, VA notified the Veteran of the information and evidence needed to substantiate and complete the claims through letter dated in December 2012. The letter provided notice of what part of that evidence is to be provided by the claimant, and notice of what part VA will attempt to obtain. It also informed the Veteran of the specific criteria for establishing effective dates. 

VA has provided adequate notice of how effective dates are assigned. 

In addition to its duty to notify, or inform, the Veteran with regard to his claim, VA also has a duty to assist the Veteran in the development of the claim. This duty includes assisting the Veteran in the procurement of service treatment records and records of pertinent medical treatment since service, and providing the Veteran a medical examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159.

As to the duty to assist, the VA has associated with the claims folder the Veteran's service and post-service VA treatment records. The Veteran was afforded with VA examination in January 2013 in conjunction with is SMC claim. The Veteran has not identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of the claim that has not been obtained. The Board finds that no additional assistance is required to fulfill the VA's duty to assist. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002). 

Earlier Effective Dates 

The effective date of an award of disability compensation, in conjunction with a grant of entitlement to service connection on a direct basis, shall be the day following separation from active service or the date entitlement arose if the claim is received within one year of separation from service. Otherwise, the effective date shall be the date of receipt of the claim, or the date entitlement arose, whichever is later. 38 U.S.C.A. § 5110; 38 C.F.R. § 3.400(b)(2)(i).

The effective date provisions for awards of increased disability compensation include a general rule which is that an award based on a claim for increase of compensation "shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor." 38 U.S.C.A. § 5110(a). The corresponding VA regulation expresses this rule as "date of receipt of claim or date entitlement arose, whichever is later." 38 C.F.R. § 3.400(o)(1).

The claims for SMC and TDIU are considered increased rating claims. See Dalton v. Nicholson, 21 Vet. App. 23, 31-32 (2007); see also Hurd v. West, 13 Vet. App. 449, 451-52 (2000); Norris v. West, 12 Vet. App. 413, 420 (1999).

The law provides an exception to this general rule governing claims "for increase." 38 U.S.C.A. § 5110(a), (b)(2). If the evidence shows that the increase in disability occurred prior to the date of receipt of claim, the RO may assign the earliest date as of which it is ascertainable that the increase occurred as long as the claim for the increased disability rating was received within a year of the date that the increase occurred. 38 U.S.C.A. § 5110(b)(2); 38 C.F.R. § 3.400(o)(2); Gaston v. Shinseki, 605 F.3d 979, 982-84 (Fed. Cir. 2010); see also Harper v. Brown, 10 Vet. App. 125 (1997); Quarles v. Derwinski, 3 Vet. App. 129, 134- 135 (1992); VAOPGCPREC 12-98, 63 Fed. Reg. 56704 (1998).

Total Disability Rating due to Individual Unemployability (TDIU) 

The Veteran seeks entitlement to an effective date prior to March 31, 1985 for the award of TDIU. He contends that he should be awarded an effective date of July 1, 1952, the day following his separation from service, because the evidence of record demonstrates that he was not employable at that time. 

TDIU is granted where a Veteran's service connected disabilities are rated less than total, but they prevent him from obtaining or maintaining all gainful employment for which his education and occupational experience would otherwise qualify him. 38 C.F.R. § 4.16 . If there is only one such disability, it must be rated at 60 percent or more, and if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. Where the percentage requirement is not met, but the Veteran is unemployable due to service-connected disability, the case should be referred to the Director of the VA Compensation and Pension Service for extra-schedular consideration. 38 C.F.R. § 4.16(b).

The central inquiry is, "whether the veteran's service- connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Neither nonservice-connected disabilities nor advancing age may be considered in the determination. 38 C.F.R. §§ 3.341, 4.19; Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993).

In determining an appropriate effective date for an increased rating, or in this case the award of TDIU), under the effective date regulations involves an analysis of the evidence to determine (1) when a claim for an increased rating was received and, if possible, (2) when the increase in disability actually occurred. 38 C.F.R. §§ 3.155, 3.400(o)(2).

In the instant matter, the Veteran claims entitlement to an effective date prior to March 31, 1985, for grant of TDIU. 

The Board notes that the Veteran had not specifically raised the issue of TDIU prior to submitting his November 1988 application for TDIU. His claim was originally denied in a February 1989 rating decision, which was subsumed by an April 1990 Board decision. The Veteran appealed the denial of his TDIU claim to the Court of Appeals of Veterans Claims (Court), which, in July 1993, vacated and remanded the April 1990 Board decision. The Board remanded the claim for additional development in December 1993. Thereafter, in a March 1995 rating decision, the RO awarded entitlement to TDIU, effective from December 16, 1993. The Veteran appealed the assigned effective date. 

By the way of a November 1996 rating decision, the RO awarded an earlier effective date of November 30, 1988 for the award of TDIU. The Veteran appealed, and the RO's denial of an earlier effective date for TDIU was subsumed by an April 1999 Board decision. The Veteran appealed the denial of his TDIU claim to the Court, which in August 2000 vacated and remanded the Board decision. In a January 2001 decision, the Board awarded an effective date of June 5, 1985, and not earlier, for entitlement to TDIU. That award was implemented in a February 2001 rating decision. 

Later, the Veteran filed a claim of clear and unmistakable evidence in a July 1953 rating decision which denied an evaluation in excess of 40 percent for gunshot wound to the left thigh, muscle group XIII. A July 2008 Board decision found clear and unmistakable error in a July 1953 rating decision and assigned an initial 70 percent disability rating for gunshot wound injury residuals to Muscle Groups XIII, XIV, XVI, XVII, and XVIII. The Board's 2008 decision was implemented in a December 2008 rating decision, and thereafter, in the February 2013 rating decision, the RO awarded an earlier effective date of March 31, 1985 for the award of TDIU based on a finding of clear and unmistakable error. The Veteran appealed. 

Initially, the Board notes that the July 1953 rating decision is not final with respect the TDIU claim. See Roberson v. Principi, 251 F.3d 1378 (Fed. Cir. 2001)(VA must consider whether the veteran is entitled to a total rating for compensation purposes based on individual unemployability);see also Rudd v. Nicholson, 20 Vet. App. 296 (2006) (recognizing clear and unmistakable error as a way to overcome the finality of a decision in order to obtain an earlier effective date). The July 2008 Board decision found CUE in the July 1953 rating decision for denying an evaluation in excess of 40 percent, which was implemented by the December 2008 rating decision and was revised by the February 2013 to include an effective date of March 31, 1985 for the grant of TDIU. 

Since the July 1953 rating decision is not final, and a claim for TDIU is considered part and parcel of the increased rating claim, the Board finds that July 1, 1952, is considered the date of receipt of the Veteran's claim as his original claim was received within a year of his separation from service. See 38 U.S.C.A. § 5110; 38 C.F.R. § 3.400(b)(2)(i). 

The effective date of the TDIU is the latter of two dates: the date of receipt of the claim (which in this case is construed as July 1, 1952); or the date it is factually ascertainable that TDIU is warranted. See 38 C.F.R. § 3.400. In this case, the Board must review the record to determine when it is factually ascertainable that the Veteran's service-connected disabilities rendered him totally unemployable pursuant to 38 C.F.R. § 4.16 to warrant an award of TDIU. 

The record shows that the Veteran met the basic criteria for consideration for entitlement to TDIU on a schedular basis since July 1, 1952, the day following the date of his separation from service, based on the receipt of a combined 80 percent disability rating. See 38 C.F.R. § 4.16(a). The remaining question on appeal is when the evidence of record actually shows that the Veteran's service-connected disabilities precluded him from obtaining or maintaining substantially gainful employment consistent with his education and occupational experience.

The Veteran contends that the award of TDIU should be effective as July 1, 1952, the date of his separation from service, as the evidence demonstrates that he was not employable at that time. 

The record shows that the Veteran filed a claim for service connection for residuals of a gunshot wound to the left hip in March 1953. The record contained evidence that the Veteran had been separated from service due to him not being able to serve due to his residuals of gunshot wound to the left hip. On his 1953 application, the moving party indicated that he was receiving retirement from the Army at the monthly amount of 50 percent base pay as a private first class. A subsequent record notes that the Veteran's temporary military disability retirement pay was terminated, effective from April 30, 1953. 

While the record contains various VA treatment records that record the medical care that the Veteran received for his disabilities, there is no other medical opinion of record that addresses whether the Veteran's disabilities prevent substantially gainful employment prior to March 31, 1985. 

 Although the evidence of record demonstrated that the Veteran was discharged from service due to his residuals of gunshot wound to the left hip and he received disability retirement pay until April 1953, the totality of the evidence of record does not demonstrate that the Veteran was unemployable due to his service-connected disabilities prior to March 31, 1985. Notably, prior to his more recent assertions, the Veteran had consistently asserted that he became unable to work due to his service-connected disabilities in March 1985. See November 1988 VA Form 21-8940, Application for Unemployability (the Veteran indicated March 30, 1985 as the date his disability affect his fulltime employment and the last date he worked full time); February 1990 and November 1998 Board hearing transcripts (the Veteran testified that he last worked in March 1985); and Social Security Administration records (show the Veteran claimed that he became too disabled to work on March 30, 1985). 

Based on the Veteran's previous inconsistent statements regarding when he became unemployable, as discussed above, the Board finds that the Veteran is not a credible historian regarding his TDIU claim. See Caluza v. Brown, 7 Vet. App. 498, 510-511 (1995) (Credibility can be generally evaluated by a showing of interest, bias, or inconsistent statements, and the demeanor of the witness, facial plausibility of the testimony, and the consistency of the witness testimony.)

Moreover, during the January 1953 service evaluation, the Veteran reported having been steadily employed, and in April 1957, the VA received a correspondence from the Veteran, in which he indicated that he had sought full-time employment, despite his service-connected disabilities.

Despite the Veteran's eligibility for TDIU benefits, the Board concludes that the preponderance of the evidence demonstrates that the Veteran's service-connected disabilities did not render him unable to secure or follow a substantially gainful occupation prior to March 31, 1985 (the date following his last date of his full time employment). 

The evidence of record demonstrates that March 31, 1985 is the date that it is first factually ascertainable that his service-connected disabilities prevent him from obtaining and maintaining substantially gainful employment. See 38 U.S.C.A. § 5107(b), 38 C.F.R. §§ 4.3, 4.16(b). As the preponderance of the evidence of record is against a finding that the Veteran was unemployable due to his service-connected disabilities prior to March 31, 1985 and award of an earlier effective date for the award of TDIU is denied. 

The governing legal authority for establishing effective dates relies on very specific rules, and VA is bound by that authority. See 38 C.F.R. §§ 3.157(b), 3.400(o) (2). An effective date for an increased rating, including awards of TDIU, is either the date the increased rating claim was received, or the date it is factually ascertainable that the increase in disability to warrant an award of TDIU actually occurred, whichever is later. 38 C.F.R. §§ 3.155, 3.400(o)(2). Based on the reasons explained above, an effective date prior to March 31, 1985 for the grant of TDIU is denied. 

Special Monthly Compensation (SMC) based on Aid and Attendance 

The Veteran seeks entitlement to an effective date prior to December 7, 2012 for the award of SMC based on the need of aid and attendance. He contends that he met the criteria for SMC based on the need for aid and attendance when he was hospitalized in June 2010, and an inferred claim for SMC should have been raised as of the date of his hospitalization. 

A veteran shall be considered to be in need of a regular aid and attendance if he or she has the anatomical loss or loss of use of both feet, one hand and one foot, or is so helpless or blind or permanently bedridden as to need or require the regular aid and attendance of another person. 38 U.S.C.A. § 1114(l); 38 C.F.R. § 3.350(b). 

In determining whether a veteran is helpless or nearly so helpless as to require the regular A&A of another person, the following circumstances will be considered: Inability of the veteran to dress or undress himself, or to keep himself ordinarily clean and presentable; frequent need of adjustment of any special prosthetic or orthopedic appliances which by reason of the particular disability cannot be done without aid (this will not include the adjustment of appliances which normal persons would be unable to adjust without aid, such as supports, belts, lacing at the back, etc.); inability of the veteran to feed himself through loss of coordination of upper extremities or through extreme weakness; inability to attend to the wants of nature; or incapacity, physical or mental, which requires care or assistance on a regular basis to protect the veteran from hazards or dangers incident to his daily environment. 38 C.F.R. § 3.352(a). 

Determinations that the veteran is so helpless, as to be in need of regular aid and attendance will not be based solely upon an opinion that the veteran's condition is such as would require him to be in bed. They must be based on the actual requirement of personal assistance from others. 38 C.F.R. § 3.352(a). 

It is not required that all the disabling conditions enumerated in § 3.352(a) be found to exist before a favorable rating may be made. The particular personal functions which the Veteran is unable to perform should be considered in connection with his condition as a whole. 38 C.F.R. § 3.352(a); see also Turco v. Brown, 9 Vet. App. 222, 224 (1996) (holding that at least one factor listed in section 3.352(a) must be present for a grant of SMC based on need for aid and attendance). 

In this case, on December 7, 2012, the Veteran submitted a statement requesting aid and attendance. In January 2013, the Veteran underwent a VA examination for aid and attendance, in which the examining physician, found that the Veteran required assistance with putting on his socks, shoes and left knee brace as well as cutting his toenails because of his symptomatology due to his service-connected sciatic nerve, left hip, and lumbar spine disabilities. In a January 2013 rating decision, the RO granted his claim for SMC based on aid and attendance and assigned an effective date of December 7, 2012. The Veteran perfected an appeal as to the assigned effective date. The Board will consider whether the evidence of records supports the assignment of an effective date prior to December 7, 2012. 

VA regulations provide that the terms claim and application mean a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement to a benefit. 38 C.F.R. § 3.1(p). Generally, the date of receipt of a claim is the date on which a claim, information, or evidence is received by VA. 38 C.F.R. § 3.1(r). Once a formal claim for VA benefits has been filed, a subsequent informal request for increase will be accepted as a claim. 38 C.F.R. § 3.155(c). Generally, the informal claim must identify the benefit sought. 38 C.F.R. § 3.155(a). A treatment note may constitute an informal claim for increase. 38 C.F.R. § 3.157. 

The Court has held that VA has a "well-established" duty to maximize a claimant's benefits. See Buie v. Shinseki, 24 Vet. App. 242, 250 (2011); AB v. Brown, 6 Vet. App. 35, 38 (1993). This duty to maximize benefits requires VA to assess all of a claimant's disabilities to determine whether any combination of disabilities establishes entitlement special monthly compensation (SMC) under 38 U.S.C.A § 1114. See Bradley v. Peake, 22 Vet. App. 280 (2008). 

The record shows that prior to December 7, 2012, the Veteran submitted a claim for increased disability rating for his sciatic nerve disability on July 7, 2012. Shortly thereafter, his VA examination in September 2012 revealed that he required the constant use of assistive devices for ambulation and his disability caused him functional impairment that affected his activities of daily living. Again, the findings reported at the time of the 2013 VA examination reveal that the Veteran required aid and attendance at that time. Thus, the criteria for an effective date of July 7, 2012, for the award of SMC based upon the need for aid and attendance (the date of the Veteran's claim for an increase rating for his sciatic nerve disability) are met. 

With respect to entitlement to an effective date prior to July 7, 2012, the preponderance of evidence is against a finding that the Veteran was in need of regular aid and attendance due to his service-connected disabilities. As discussed above, the Veteran asserts that an effective date of June 22, 2010, the date he was hospitalized, should be assigned for the award of SMC based on aid and attendance. However, a review of the Veteran's VA treatment records shows that he was hospitalized in June 2010 for incision and drainage of right subcostal wound abscess, which is non-service connected disability. The VA treatment records show that the Veteran was again hospitalized in September 2010 for congestive heart failure and treatment with implantable cardiac defibrillator. However, the Veteran is not service-connected for his congestive heart failure. 

The record also contains the report of an October 2010 VA respiratory examination which shows although the Veteran had difficulty ambulating because of his muscle group injury disabilities, the VA examiner specifically noted that the Veteran was in a wheel chair and could not ambulate across the room without shortness of breath because of his non-service connected chronic pulmonary disorder (COPD) and congestive heart failure. 

Subsequent VA treatment records also do not show that the Veteran required the aid and assistance of another because of his service-connected disabilities. Notably, a May 2011 VA nursing assessment report shows that the Veteran was admitted related to an incident with his cardiac defibrillator implant. At that time, the Veteran denied that he required help activities of daily living, to include feeding, dressing, or bathing, in the past two weeks. He stated that he required some assistance with ambulation, but there was no indication that he was unable to ambulate. Similarly, a July 2011 VA primary care annual functional evaluation shows that the Veteran was considered independent and he had no special requests or needs related to his home situation. There was no indication of change in his ability to ambulate or perform activities of daily living. 

There is no indication in these records that the Veteran met any of the criteria in 38 C.F.R. § 3.352(a), or otherwise required care or assistance on a regular basis for protection from hazards or dangers incident to his daily environment as a result of his service-connected disabilities prior to July 7, 2012. Therefore, the Board finds that an effective date prior to July 7, 2012 for an award of SMC based upon the need for aid and attendance is not warranted.

Accordingly, the Board finds that the effective date for the award of SMC based on the Veteran's need for aid and attendance should be from July 7, 2012, the date of his claim for increased rating, and not earlier.



ORDER

Entitlement to an effective date prior to March 31, 1985 for the award of TDIU is denied. 

Entitlement to an effective date of July 9, 2012, and not earlier, for the award of special monthly compensation based on the need for aid and attendance, is granted. 




____________________________________________
MICHAEL LANE
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs