http://www.va.gov/vetapp16/Files2/1617293.txt

Citation Nr: 1617293 
Decision Date: 04/29/16 Archive Date: 05/04/16

DOCKET NO. 07-35 753 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in New Orleans, Louisiana

THE ISSUES

1. Entitlement to service connection for systemic lupus erythematosus (SLE).
 
2. Entitlement to service connection for Raynaud's syndrome.

REPRESENTATION

Appellant represented by: The American Legion

ATTORNEY FOR THE BOARD

T. Stephen Eckerman, Counsel

INTRODUCTION

The Veteran served on active duty from October 1988 to November 1989.

These matters come before the Board of Veterans' Appeals (Board) on appeal from an April 2006 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas, which denied claims for service connection for SLE and Raynaud's syndrome. The Veteran appealed both denials, and in September 2011, the Board denied the claims.

The Veteran appealed to the U.S. Court of Appeals for Veterans Claims (CAVC). In May 2013, the CAVC vacated the Board's April 2006 decision, and remanded the claims for additional development. The CAVC Order essentially indicates that additional development was required because the Board's analysis of whether or not an examination was required was inadequate.

In June 2014, and February 2015, the Board remanded the claims for additional development. 

This appeal was processed using the VBMS and Virtual VA paperless claims processing system. Accordingly, any future consideration of this appellant's case should take into consideration the existence of this electronic record.

The Board apologies for the many delays in the full adjudication of this case. 

FINDING OF FACT

The Veteran does not have systemic lupus erythematosus, or Raynaud's syndrome, due to her service.

CONCLUSION OF LAW

Systemic lupus erythematosus, and Raynaud's syndrome, were not incurred in, and are not otherwise due to, the Veteran's active duty service. 38 U.S.C.A. §§ 1131, 5107 (West 2014 & Supp. 2015); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309 (2015).

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran asserts that she has systemic lupus erythematosus, and Raynaud's syndrome, due to her service. 

Service connection may be granted for disability which is the result of disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1131; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Service connection may also be established for a current disability on the basis of a presumption under the law that certain chronic diseases manifesting themselves to a certain degree within a certain time after service must have had their onset in service. 38 U.S.C.A. §§ 1101, 1112, 1137; 38 C.F.R. §§ 3.307, 3.309(a). Systemic lupus erythematosus, and Raynaud's disease, can be service connected on such a basis; however, as will be explained in more detail below, the record is absent evidence of these conditions within a year following the Veteran's discharge from service.

With chronic disease shown as such in service so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date are service connected, unless clearly attributable to intercurrent causes. 38 C.F.R. § 3.303(b). For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. Id. When the disease identity is established (leprosy, tuberculosis, multiple sclerosis, etc.), there is no requirement of evidentiary showing of continuity. Id. For this purpose, a chronic disease is one listed at 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 708 F.3d 1331, 1338-39 (Fed. Cir. 2013). 

The Veteran's service treatment records do not show any complaints, treatment, or diagnoses involving poor circulation, cold extremities, or joint pains. They include a separation examination report, dated in October 1989, which shows that all body systems, to include her upper and lower extremities, "spine, other musculoskeletal," vascular system, feet, and skin, were clinically evaluated as normal. The report notes a twin pregnancy, and that she was recommended for high-risk obstetric care. An associated "report of medical history" shows that the Veteran stated, "I am in good health." She indicated that she did not have a history of swollen or painful joints, "arthritis, rheumatism, or bursitis," or "bone, joint or other deformity." 

As for the post-service medical evidence, it includes a VA examination report, dated in July 1992, which notes complaints of numbness of the feet and hands, with a history of foot numbness since December 1988. X-rays of the hands and feet were normal. The diagnosis was decreased sensation of the left mid-fingertip, with otherwise normal findings. 

A VA report, dated in December 1998, shows that the Veteran presented with complaints of a history of chronic foot problems since service. She asserted that it was secondary to Reynaud's phenomenon and plantar fasciitis. The assessment was plantar fasciitis, with a recommendation that she be evaluated for Raynaud's phenomenon vs. Raynaud's disease, "should scleroderma, dermatophytosis, rheumatoid arthritis, and systemic lupus be ruled out." 

A VA report, dated in January 1999, shows that the Veteran was diagnosed with Raynaud's disease, and that it was noted that her smoking may lead to exacerbations of this disorder. 

A 2011 report contains an assessment noting undifferentiated connective tissue disease, history of lupus profundus, inflammatory polyarthropathy, and arthralgia.

A report from a private physician, T.P., M.D., dated in March 2014, contains diagnoses that include polyarthralgia, dermatitis due to lupus, rheumatoid arthritis, "hand pain secondary to carpal tunnel syndrome, flexor tenosynovitis," hip pain secondary to trochanteric bursitis, and bursitis with flare. 

In June 2014, the Board remanded the claims in order to obtain etiological opinions, in light of the above.

A VA artery and vein conditions disability benefits questionnaire (DBQ), dated in July 2014, shows that the examiner indicated that the Veteran's claims file had been reviewed. The diagnosis was Raynaud's syndrome, with a date of diagnosis of 1992. 

A VA systemic lupus erythematous and other autoimmune disease DBQ, dated in July 2014, shows that the examiner (the same examiner who completed the July 2014 artery and vein conditions DBQ) indicated that the Veteran's claims file had been reviewed. The diagnosis was lupus panniculitis, biopsy proven, and the date of diagnosis was 1999. The examiner stated that the Veteran's lupus panniculitis was diagnosed by biopsy in 1999, that this was years after her military career, and outside of the presumptive period. 

The examiner concluded that the claimed conditions were less likely as not (less than 50 percent probability) incurred in or caused by service. The examiner explained that both conditions were diagnosed outside of service, and outside of the presumptive period after service. 

In this regard, it was noted that the Veteran was separated from service in 1989, her biopsy-confirmed diagnosis of lupus was in 1999, and Raynaud's was ruled out in 1990 - 1992 after symptoms appeared. 

In February 2015, the Board again remanded the claims in order to obtain etiological opinions, explaining that the rationales in the July 2014 VA DBQs were inadequate.

A VA artery and vein conditions disability benefits questionnaire (DBQ), dated in April 2015, shows that the examiner indicated that the Veteran's claims file had been reviewed. The diagnosis was Raynaud's, and the date of diagnosis was 1992. The Veteran reported that she had cold hands and feet during service, with ongoing symptoms following service, and treatment as a military dependent for her symptoms in the 1990s. The examiner summarized her service treatment records and concluded that the evidence does not support that the Veteran was symptomatic for lupus or Raynaud's disease during service. 

In this regard, following separation from service, a January 1992 X-ray notes a history of Raynaud's phenomenon; this is the earliest finding of a possible diagnosis of Raynaud's phenomenon. There is no associated provider note with this X-ray report. A July 1992 VA examination report shows complaints of cramps in the Veteran's calf muscles three to four times per week that occur at night, and her feet going numb if she stands 30 minutes. She reported a history of these symptoms since December 1988, and noted that she also had hand numbness that was relieved by rubbing. A physical examination was negative for lupus or Raynaud's. Although she self-reported symptoms of cold hands and feet in July 1992, she is not qualified to diagnose her condition. The health care provider at that time, who is qualified to diagnose her condition, did not note lupus or Raynaud's. In 1997, she was treated for right knee swelling with standing many hours at her current job. The diagnosis was joint inflammation of the right knee. Although joint inflammation is a symptom of lupus, this evidence does not suggest an inservice or presumptive period occurrence. A December 1998 hematology screen for connective tissue disease was positive, as seen in lupus. Thereafter, she was treated for a left leg ulcer in October 1999 and a November 2000 biopsy showed lupus panniculitis. These findings suggest no evidence of symptoms of lupus until 1999, which is after the presumptive period. A number of reports dated thereafter show treatment for lupus. In March 2000, the Veteran gave a history of Raynaud's disease for seven to eight years, which would have been in 1992 or 1993. These findings do not suggest an inservice onset or an onset within the presumptive period. In December 2003, the Veteran was treated for right ankle sprain with minor arthritic changes and these conditions are not due to lupus or Raynaud's. There is no evidence of diagnosis or a complaint of Raynaud's or symptoms of Raynaud's phenomena such as cold hands or feet prior to 1992. 

A VA systemic lupus erythematous and other autoimmune disease DBQ, dated in April 2015, shows that the examiner (the same examiner who completed the April 2015 artery and vein conditions DBQ) indicated that the Veteran's claims file had been reviewed. The diagnoses were SLE, with a date of diagnosis of 1999, and "degenerative age-related changes of hands, ankles, back and feet, as noted by X-ray unrelated to lupus." The report notes the following: service treatment records are negative for a diagnosis or treatment of lupus or SLE. There was treatment during service for plantar fasciitis and a right foot stress fracture, however, these are not symptoms of lupus or Raynaud's phenomenon. This evidence does not support that the Veteran was symptomatic for lupus or Raynaud's phenomenon in service. The examiner summarized the Veteran's relevant treatment following separation from service; this summary is essentially identical to that provided in the April 2015 VA artery and vein conditions DBQ. 

The Board finds that the claims must be denied. The Veteran was treated for various symptoms during service, none of them are shown to have been related to either SLE or Raynaud's by the most probative evidence of record, i.e., the April 2015 VA DBQs. She was not diagnosed with either of these conditions during service, and in her October 1989 "report of medical history," the Veteran stated, "I am in good health." She indicated that she did not have a history of swollen or painful joints, "arthritis, rheumatism, or bursitis," or "bone, joint or other deformity." 

As noted in the July 2014 VA DBQ, the Veteran was separated from service in 1989, her biopsy-confirmed diagnosis of lupus was in 1999, and Raynaud's was ruled out in 1990 - 1992 after symptoms appeared. Although the July 2014 VA opinions failed to discuss the Veteran's reports of her symptoms, they are not entirely without probative value. In addition, and in any event, the opinions in the April 2015 VA artery and vein conditions DBQ are considered highly probative evidence against the claims, as this examination report shows that the examiner stated that the Veteran's claims file had been reviewed, and as these opinions are accompanied by sufficient rationales. See Prejean v. West, 13 Vet. App. 444, 448-9 (2000); Neives-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). Simply stated, while the Board fully understands the Veteran's central concern, there is now significant medical evidence against the Veteran's belief that the problems she had in service were initial manifestations of the problems at issue. The Board cannot ignore such evidence. 

The evidence is also insufficient to show that SLE or Raynaud's disease was manifested to a compensable degree within one year of separation from service. 38 C.F.R. §§ 3.307, 3.309. Accordingly, the Board finds that the preponderance of the evidence is against the claims, and that the claims must be denied.

In reaching these decisions, the Board has fully considered the opinion of S.O., M.D., dated in August 2006, who states that the Veteran has a longstanding history of problems with a leg wound that have been proven by biopsy to be related to lupus, and that she has reported a history of symptoms that include Raynaud's, mouth ulcers, easy bruising, and possibly some thrombocytopenia back in 1988 to 1999. She stated that she specifically remembers this when she was previously being examined in the military. Dr. O essentially stated that "there may have been intentionally some early signs of lupus at that time, obviously understanding the fact that several clinical symptoms and/or signs are needed for the diagnosis of lupus."

The Board has also considered a November 2006 VA progress note, which notes the following: "signs of lupus include fatigue, fever, arthralgias and myalgias, dermal rashes, itching and other problems that could easily be occurring at any age." Lupus is a difficult diagnosis. The examiner stated, "It is possible that this may have been developing during her active duty." The examiner thought that it was a good idea for her to pursue a service connection claim. The examiner stated, "If the patient's records do reflect findings consistent with SLE, it is very possible that it was beginning to show symptoms at the sign of her active duty service." 

However, neither of these opinions are shown to have been based on a review of the Veteran's entire medical history or any other detailed and reliable medical history. They appear to have been based on the Veteran's own belief that she had the claimed conditions during service, and not on an objective review of the evidence. More importantly, and of particular note, unlike the opinions against the claim, these opinions are equivocal in their terms. Neives-Rodriguez; Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997) (recognizing the Board's "authority to discount the weight and probity of evidence in light of its own inherent characteristics and its relationship to other items of evidence"). Simply stated, the best medical evidence in this case provides highly probative evidence against the Veteran's claims. The positive medical opinions are highly unpersuasive. Accordingly, the claims must be denied.

With regard to the appellant's own contentions, although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issues in this case, they fall outside the realm of common knowledge of a lay person. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). Although the Veteran is competent to report the presence of vascular and joint symptoms, the claimed disabilities are not the types of conditions that are readily amenable to mere lay diagnosis or probative comment regarding their etiology, as the evidence shows that specific findings are needed to properly assess and diagnose these disorders, and determine their etiology. Jandreau; Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007). The issues on appeal are based on the contentions that SLE, and Raynaud's syndrome, are related to service. The Veteran's service treatment reports and the post-service medical records have been discussed. The claimed conditions are not shown during or until more than one year after service. Given the foregoing, the Board finds that the medical evidence outweighs the appellant's contentions to the effect that she has the claimed conditions due to service. Madden v. Gober, 125 F. 3d 1477, 1481 (Fed. Cir. 1997).

As the preponderance of the evidence is against the claims, the benefit of the doubt doctrine is not for application. See generally Gilbert v. Derwinski, 1 Vet. App. 49 (1990); Ortiz v. Principi, 274 F. 3d 1361 (Fed. Cir. 2001).

Duties to Notify and Assist

VA has a duty to notify and a duty to assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. §§ 3.159, 3.326(a).

The Veteran has not alleged prejudice with respect to notice, as is required. See Shinseki v. Sanders, 129 S. Ct. 1696 (2009). None is found by the Board. Indeed, VA's duty to notify has been more than satisfied. The Veteran was notified of the criteria for establishing service connection, the evidence required in this regard, and her and VA's respective duties for obtaining evidence, via a letter dated in February 2006. She also was notified of how VA determines disability ratings and effective dates if service connection is awarded. 

The RO also provided assistance to the appellant as required under 38 U.S.C.A. § 5103A and 38 C.F.R. § 3.159(c), as indicated under the facts and circumstances in this case. It appears that all known and available service treatment reports, and post-service records relevant to the issues on appeal have been obtained and are associated with the Veteran's claims files. The RO has obtained the Veteran's VA and non-VA records. She has been afforded examinations, and etiological opinions have been obtained. 

In February 2015, the Board remanded this claim. The Board directed that
etiological opinions be obtained from a VA examiner. In April 2015, this was done. Under the circumstances, the Board finds that there has been substantial compliance with its remand. See Dyment v. West, 13 Vet. App. 141, 146-147 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998) where Board's remand instructions were substantially complied with). 

Based on the foregoing, the Board finds that the Veteran has not been prejudiced by a failure of VA in its duty to assist, and that any violation of the duty to assist could be no more than harmless error. See Conway v. Principi, 353 F.3d 1369 (Fed. Cir. 2004).

ORDER

Service connection for systemic lupus erythematosus, and Raynaud's syndrome, is denied.

____________________________________________
JOHN J. CROWLEY
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs