http://www.va.gov/vetapp16/Files4/1634351.txt

Citation Nr: 1634351 
Decision Date: 08/31/16 Archive Date: 09/06/16

DOCKET NO. 12-25 231 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida

THE ISSUES

1. Entitlement to service connection for a lumbar spine disorder, to include as secondary to service-connected right ankle injury residuals.

2. Entitlement to an increased rating for right ankle injury residuals, currently rated as 10 percent disabling.

3. Entitlement to a total rating based on individual unemployability due to service-connected disability (TDIU).

REPRESENTATION

Veteran represented by: Robert Chisholm, Attorney

ATTORNEY FOR THE BOARD

David Nelson, Counsel
INTRODUCTION

The Veteran served on active duty from May 1968 to May 1970.

This case comes before the Board of Veterans' Appeals (Board) from a February 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida.

This case was before the Board in March 2015. The March 2015 Board decision reopened the Veteran's low back claim but denied entitlement to service connection on the merits. The Veteran appealed the March 2015 Board decision to the United States Court of Appeals for Veterans Claims. A December 2015 Joint Motion for Partial Remand requested that the Court vacate that part of the March 2015 Board decision that denied entitlement to service connection for low back disability. In December 2015, the Court issued an Order that granted the Joint Motion. As the March 2015 Board decision had remanded the right ankle claim, that issue was not impacted by the Joint Motion and is currently before the Board.

In June 2016 correspondence the Veteran's representative waived initial RO consideration of evidence submitted subsequent to the last RO adjudication.

The claims of entitlement to an increased rating for residuals of right ankle injury and entitlement to TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDING OF FACT

The most probative evidence of record demonstrates that the Veteran's lumbar spine degenerative disc disease, status-post hemilaminectomy, is related to active service.

CONCLUSION OF LAW

The criteria for service connection for lumbar spine degenerative disc disease, status-post hemilaminectomy, have been met. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. § 3.303 (2015).

REASONS AND BASES FOR FINDING AND CONCLUSION

In light of the favorable decision to grant the Veteran's claim of service connection for low back disability, any deficiency as to VA's duties to notify and assist, as to that issue, is rendered moot.

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131 (West 2014); 38 C.F.R. § 3.303(a) (2015). To establish a right to compensation for a present disability, a Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service - the so-called "nexus" requirement. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). Service connection may be granted for any disease initially diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2015). 

In addition, service connection for certain chronic diseases, including arthritis, may be established on a presumptive basis by showing that the condition manifested to a degree of 10 percent or more within one year from the date of separation from service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1131, 1137 (West 2014); 38 C.F.R. 
§§ 3.307, 3.309(a) (2015); Fountain v. McDonald, 27 Vet. App. 258, 271-72 (2015). Although the disease need not be diagnosed within the presumption period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309(a).

For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. If chronicity in service is not established, a showing of continuity of symptoms after discharge may support the claim. 38 C.F.R. §§ 3.303(b), 3.309 (2015); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

Secondary service connection may also be granted for a disability, which is proximately due to, the result of, or aggravated by, an established service-connected disorder. 38 C.F.R. § 3.310; Allen v. Brown, 7 Vet. App. 439 (1995). 

The Veteran asserts that he has a lumbar spine disorder that resulted from injuries incurred during his military service. He also asserts that he has fallen and injured his back as the result of weakness in his service-connected right ankle disability.

First, the Board finds that there is a current lumbar spine disorder. 38 C.F.R. § 3.303; Holton, 557 F.3d at 1366. A December 1976 private hospital discharge summary reflects a diagnosis of herniated nucleus pulposa, L5. A July 2012 VA back examination have noted degenerative disc disease of the lumbar spine, status post hemilaminectomy. Accordingly, the first element of service connection is met.

Second, the Board finds that there is an in-service event. 38 C.F.R. § 3.303; Holton, 557 F.3d at 1366. A September 1969 service treatment record (STR) reflects that the Veteran complained of back pain that had persisted for two weeks; the assessment was back sprain. An October 1969 STR reflects that the Veteran complained of pain in the lower back of two days duration resulting from a football injury. Examination revealed tenderness of the paraspinal muscles. The February 1970 service separation examination report indicates that his spine was clinically evaluated as normal. In the corresponding Report of Medical History, the Veteran reported recurrent back pain and that he was currently undergoing orthopedic consultation. Accordingly, the in-service aspect of service connection is met.

Third, then, the issue is whether there is a relationship between the in-service events or injuries and the Veteran's current lumbar spine disabilities. 38 C.F.R. § 3.303; Holton, 557 F.3d at 1366. 

In a January 1977 statement, the Veteran reported he injured his back during service. He has also consistently asserted that he has had low back pain since active service. 

In a December 1976 private medical record, the Veteran reported an injury to his low back in 1969 (during service) and in January 1976 (post-service). The diagnosis was herniated nucleus pulposa L5. In a January 1977 VA medical record, it was noted that the Veteran underwent a lumbar spine hemilaminectomy with discectomy. In a February 1977 VA examination, the diagnosis was residuals of herniated disc and laminectomy. A July 2008 VA examination was conducted. The Veteran reported that he injured his back during service in 1969. The examiner opined that there was no medical literature to support the claim that the right ankle disability caused his low back disorder. 

A July 2012 VA examination was conducted. The Veteran reported that he injured his back due to falls due to his service-connected right ankle disorder. Upon examination, the diagnosis was degenerative disc disease, lumbar spine, status-post hemilaminectomy. Upon review of the STRs and post-service records, the examiner opined that the Veteran's low back disability was not related to his active service. In providing a rationale for the opinion, the examiner essentially relied on the fact that the Veteran had separated from service in 1970 but had not been treated again for back disability until 1976 as a result of a fall. The examiner also opined the disorder was unrelated to the right ankle disability as medical literature did not support such a finding. 

In a June 2016 submission, a private physician Dr. DM, stated that it was his opinion that the Veteran's "present thoracolumbar pathology/symptoms, and bilateral lower extremity radiculopathy" were the direct result of his initial in-service injury. The submitted opinion from Dr. DM indicates that the physician reviewed relevant medical records as it contains specific references to the Veteran's STRs, private medical records, and VA medical records. Additionally, the Board notes that Dr. DM has over 26 years of experience as an orthopedic surgeon and served as a Navy Flight Surgeon from 1969 to 1972. Dr. DM's submission also contained references to relevant medical literature pertaining to low back disabilities. Significantly, and in noting that the Veteran suffered a fall in 1976 that reinjured his back, Dr. M noted that even disregarding the January 1976 fall that permanently escalated the Veteran's symptoms, the Veteran's ongoing progressive lumbar and left lower extremity symptoms would have led eventually to surgical intervention as he was experiencing progressive worsening of his symptoms. Dr. M concluded that by stating that the Veteran had likely developed chronic mechanical back syndrome based on his in-service injury. 

The Board finds that the private opinion is more probative than the VA opinion. This is because the Board finds that the Veteran's lay statements regarding back pain since service discharge are both competent and credible, as his statements have been consistent and are supported by the record, to include complaints of back pain at service discharge and 6 years later, after a re-injury of the back. See Caluza v. Brown, 7 Vet. App. 498, 511 (1995) (noting that the credibility of a witness may be impeached by a showing of interest, bias, inconsistent statements, consistency with other evidence), aff'd, 78 F.3d 604 (Fed. Cir. 1996); Layno v. Brown, 6 Vet. App. 465, 469-70 (1994) (holding that a lay witness is competent to testify to that which the witness has actually observed and is within the realm of his personal knowledge).

Accordingly, although both the VA and the private examiner based their opinions upon a review of the relevant medical records and provided a supporting explanation for the opinions provided, only the private physician accorded the Veteran's lay statements any weight. See Prejean v. West, 13 Vet. App. 444, 448-9 (2000) (holding that factors for assessing the probative value of a medical opinion are the physician's access to the claims file and the thoroughness and detail of the opinion); Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302-04 (2008) (noting that the central issue in determining the probative value of an opinion is whether the examiner was informed of the relevant facts in rendering a medical opinion); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) (holding that a medical opinion must be supported by an analysis that the Board can consider and weigh against contrary opinions). Accordingly, the most probative evidence of record indicates that the disorder is related to service, and service connection for degenerative disc disease of the lumbar spine, status-post hemilaminectomy is warranted.

ORDER

Service connection for degenerative disc disease of the lumbar spine, status-post hemilaminectomy, is granted.

REMAND

Remand is required regarding the issue of entitlement to an increased rating for right ankle injury residuals, to obtain an adequate examination. Although a July 2015 VA examination was conducted, recent caselaw renders that examination inadequate. See Correia v. McDonald, ---Vet. App.---, 2016 WL 3591858 (July 5, 2016). In particular, the Board notes that findings from that examination appear insufficient to assess the Veteran's right ankle motion in passive motion, weight-bearing, and nonweight-bearing settings. Accordingly, the Veteran should be afforded another VA examination to assess the current nature and severity of his right ankle disability.

Remand is required regarding the claim for entitlement to a total rating based on individual unemployability due to service-connected disability (TDIU), for development. TDIU is part of an increased rating issue when such claim is raised by the record. Rice v. Shinseki, 22 Vet. App. 447 (2009). The Board notes that in his June 2016 letter, Dr. DM essentially indicated that the Veteran is unable to work secondary to his service-connected disabilities. As such, TDIU must be adjudicated by the AOJ prior to appellate consideration.

Accordingly, the case is REMANDED for the following action:

1. Issue VCAA notice relative to the issue of entitlement to a TDIU.

2. Contact the appropriate VA Medical Center and obtain and associate with the claims file all outstanding records of treatment on and after July 8, 2015. If any requested records are not available, or the search for any such records otherwise yields negative results, that fact must clearly be documented in the claims file. Efforts to obtain these records must continue until it is determined that they do not exist or that further attempts to obtain them would be futile. The non-existence or unavailability of such records must be verified and this should be documented for the record. Required notice must be provided to the Veteran and his or her representative. 

3. Contact the Veteran and afford him the opportunity to identify by name, address and dates of treatment or examination any relevant medical records. Subsequently, and after securing the proper authorizations where necessary, make arrangements to obtain all the records of treatment or examination from all the sources listed by the Veteran which are not already on file. All information obtained must be made part of the file. All attempts to secure this evidence must be documented in the claims file, and if, after making reasonable efforts to obtain named records, they are not able to be secured, provide the required notice and opportunity to respond to the Veteran and his representative.

4. After any additional records are associated with the claims file, provide the Veteran with an appropriate examination to determine the severity of the service-connected right ankle injury residuals. The entire claims file should be made available to and be reviewed by the examiner. Any indicated tests and studies must be accomplished and all clinical findings must be reported in detail and correlated to a specific diagnosis. An explanation for all opinions expressed must be provided. 

The examiner must utilize the appropriate Disability Benefits Questionnaire. Additionally, the examiner must test the range of right ankle motion in active motion, passive motion, weight-bearing, and nonweight-bearing settings. If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain why that is so.

5. Notify the Veteran that it is his responsibility to report for any scheduled examination and to cooperate in the development of the claim, and that the consequences for failure to report for a VA examination without good cause may include denial of the claim. 38 C.F.R. §§ 3.158, 3.655 (2015). In the event that the Veteran does not report for any scheduled examination, documentation must be obtained which shows that notice scheduling the examination was sent to the last known address. It must also be indicated whether any notice that was sent was returned as undeliverable.

6. Review the examination report to ensure that it is in complete compliance with the directives of this remand. If the report is deficient in any manner, the AOJ must implement corrective procedures. Stegall v. West, 11 Vet. App. 268, 271 (1998). 

7. After completing the above action, and any other development as may be indicated by any response received as a consequence of the actions taken in the paragraphs above, the claims must be readjudicated. If the claims remain denied, a supplemental statement of the case must be provided to the Veteran and his representative. After the Veteran and his representative have had an adequate opportunity to respond, the appeal must be returned to the Board for appellate review.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
K. Millikan
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs