﻿Citation Nr: 19172642
Decision Date: 09/18/19 Archive Date: 09/18/19

DOCKET NO. 11-26 219
DATE: September 18, 2019

ORDER

Entitlement to a 40 percent disability rating for right foot disability, since March 30, 2008, is granted. 

Entitlement to a disability rating higher than 20 percent for lower back disability is denied. 

Entitlement to an initial disability rating higher than 10 percent for right lower extremity radiculopathy is denied. 

Entitlement to an initial disability rating higher than 10 percent for left lower extremity radiculopathy is denied. 

Entitlement to a disability rating higher than 10 percent for left wrist disability with carpal tunnel syndrome (CTS) is denied. 

Entitlement to special monthly compensation (SMC) for loss of use of the left lower extremity is denied. 

Entitlement to SMC based on the need of the regular aid and attendance of another person is denied. 

FINDINGS OF FACT

1. Since March 30, 2008, impairment in the right lower extremity has caused loss of use of the right foot. 

2. Lower back disability has not caused limitation of motion on forward flexion of 30 degrees or less.

3. Radiculopathy in the right lower extremity has caused mild incomplete paralysis.

4. Radiculopathy in the left lower extremity has caused mild incomplete paralysis.

5. Impairment from CTS in the left wrist area has been mild. 

6. The evidence dated throughout the appeal period indicates that the Veteran has not lost the use of his left lower extremity. 

7. The evidence indicates that the Veteran has not needed regular aid and attendance of another person due to service-connected disability. 

CONCLUSIONS OF LAW

1. The criteria for a 40 percent disability rating for right foot disability have been met since March 30, 2008. 38 U.S.C. § §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.3, 4.71a (2018).

2. The criteria for a disability rating higher than 20 percent for lower back disability have not been met. 38 U.S.C. § 1155 (2012); 38 C.F.R. § 4.71a (2018).

3. The criteria for an initial disability rating higher than 10 percent for right lower extremity radiculopathy have not been met. 38 U.S.C. § 1155 (2012); 38 C.F.R. § 4.124a (2018). 

4. The criteria for an initial disability rating higher than 10 percent for left lower extremity radiculopathy have not been met. 38 U.S.C. § 1155 (2012); 38 C.F.R. § 4.124a (2018). 

5. The criteria for a disability rating higher than 10 percent for left wrist disability with CTS have not been met. 38 U.S.C. § 1155 (2012); 38 C.F.R. § 4.71a (2018). 

6. The criteria for SMC based on the loss of use of the left lower extremity have not been met. 38 U.S.C. § 1114 (2012); 38 C.F.R. §§ 3.350, 3.352 (2018).

7. The criteria for SMC based on the need of regular aid and attendance of another have not been met. 38 U.S.C. § 1114 (2012); 38 C.F.R. §§ 3.350, 3.352 (2018).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from April 1983 to April 1986. This matter comes to the Board of Veterans’ Appeals (Board) on appeal of rating decisions by a U.S. Department of Veterans Affairs (VA) Regional Office (RO).

In April 2017, the Veteran testified in a Board hearing convened at the RO before the undersigned Veterans Law Judge. A transcript of the hearing has been included in the electronic claims file and has been reviewed. 

In a January 2019 VA report addressing the severity of service-connected left wrist CTS, a VA examiner stated that the Veteran had left ulnar neuropathy as a residual of the service-connected left wrist injury. The issue regarding whether left ulnar neuropathy should be service connected is not on appeal before the Board. It is therefore referred to the RO for appropriate development. 

Increased Ratings

The Veteran injured his right foot and left wrist in a motor vehicle accident during service. He was hospitalized for several months after the accident for treatment of a “crush” injury to the right foot and a broken left wrist. Residuals of the foot and wrist injuries have been service connected since discharge from service in 1986. These disabilities have led to multiple additional disabilities involving the hips, lower back, and lower extremities. As a result, the RO awarded a total disability rating based on individual unemployability (TDIU) effective October 2000. Since April 2009, the RO has rated the combined disabilities as 100 percent disabling. The Veteran also receives SMC for his service-connected disability under subsections (k) and (s) of 38 U.S.C. § 1114. 

On March 30, 2009, the Veteran filed claims of entitlement to increased ratings for back, right foot, and left wrist disabilities. He also filed claims of entitlement to service connection for bilateral lower extremity radiculopathy due to back disability. In a September 2009 rating decision, the RO granted service connection for bilateral lower extremity radiculopathy and rated the disorders 0 percent disabling. In that decision, the RO denied increased ratings for the back, foot, and wrist disabilities. The Veteran appealed the decision and has asserted entitlement to higher initial ratings for right and left lower extremity radiculopathy, and higher ratings for the back, foot, and wrist disabilities. 

Disability ratings are determined by applying the criteria set forth in VA’s Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. “Staged” ratings are appropriate for any rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007); Fenderson v. West, 12 Vet. App. 119 (1999).

The applicable law and regulations concerning effective dates state that, except as otherwise provided, the effective date of an evaluation and award of pension, compensation or dependency and indemnity compensation based on an original claim, a claim reopened after final disallowance, or a claim for increase will be the date of receipt of the claim or the date entitlement arose, whichever is the later. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400. 

An exception to this rule exists under 38 C.F.R. § 3.400(o)(2). This provision allows VA to assign an effective date for increased rating up to one year prior to the date of claim where medical evidence indicates an increase in disability during that time period. 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the benefit of the doubt will be granted to the claimant. 38 U.S.C. § 5107; 38 C.F.R. §§ 3.102, 4.3; Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on the merits, the preponderance of the evidence must be against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996).

In rating disabilities, VA is precluded from differentiating between symptomatology attributed to a nonservice-connected disability and a service-connected disability in the absence of medical evidence that does so. Mittleider v. West, 11 Vet. App. 181, 182 (1998) (per curiam). In such cases, the reasonable doubt doctrine dictates that all symptoms be attributed to the service-connected disability. Id. 

The evidence in this matter consists of lay statements from the Veteran, private and VA treatment records, and VA compensation examination reports dated in June 2009, January 2010, September 2010, June 2011, September 2013, and January 2019. The Board will address the claims separately below. 

 Right Foot Disability

Residuals of a right foot injury have been service connected since April 1986. Since September 2000, the disorder has been rated 30 percent disabling. The Board will address whether a higher rating has been warranted at any time since March 30, 2008, one year prior to the claim for increased rating. 

The RO has rated the foot disability under Diagnostic Code (DC) 5284 of 38 C.F.R. § 4.71a. Under this DC, ratings of 10, 20, 30, and 40 percent are authorized. The 30 percent rating is authorized for severe disability. As the disorder has been rated 30 percent disabled throughout the appeal period, the focus here will be on whether the 40 percent rating has been warranted. A 40 percent rating is warranted for disability resulting in actual loss of use of the foot. 

The record indicates that the Veteran has lost the use of his right foot throughout the appeal period. First, effective November 2010, VA has paid SMC for loss of use of the right foot. See 38 U.S.C. § § 1114(k). Second, the evidence dated between then and March 2008 is in a state of relative equipoise regarding whether the Veteran had a loss of use of his right foot during that period. 

On the one hand, the September 2010 and June 2011 VA examination reports indicate that the right foot – despite its derangement from the crush injury – still functioned. The reports indicated that the Veteran could walk on the foot, had sensation in the foot, and had no disabling skin disorders on the foot. On the other hand, the reports also note that the Veteran was missing the fat pad on the heel of the right foot, needed Canadian crutches to ambulate, had chronic foot pain, swelling, stiffness, fatigability, and weakness for which he used pain medication, and experienced flare ups after walking and standing. The September 2010 report notes functional limitation of standing of as little as 15 minutes and functional limitation of walking of only a few yards. 

Moreover, the evidence addressing right hip disability (which is not on appeal) makes clear that the Veteran has effectively lost the use of his entire right lower extremity. Due to compensatory gait and postural weight bearing changes caused by right foot disability, he has undergone three right hip surgeries to include total replacement. His right leg is several inches shorter than the left leg. As early as January 2009, a VA treated physician noted “tremendous atrophy of his … right lower extremity in general.” Indeed, in a VA report dated two years after the period addressed here, a VA examiner found that right leg amputation from the hip down with a prosthetic leg would serve the Veteran as well as his right leg served him. So, while the VA reports indicate that the Veteran may have retained some function in the right foot, the complete evidentiary picture presents a disability level that precludes any reasonable usage anywhere in the right leg, to include in the severely injured and deranged right foot. 

As such, a 40 percent rating has been warranted for right foot disability since March 30, 2008. 

 Lower Back Disability 

Lower back disability has been service connected since July 1999 and has been rated 20 percent disabling since then. The Board will address whether a higher rating has been warranted at any time since March 30, 2008, one year prior to the claim for increased rating. 

Thoracolumbar spine disability is rated under the General Rating Formula for Diseases and Injuries of the Spine or under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes. 38 C.F.R. § 4.71a, Diagnostic Codes 5235-43. When rating under the former formula, VA is directed to evaluate orthopedic disability separately with any associated objective neurologic abnormalities under an appropriate diagnostic code, and then combine the separate ratings under 38 C.F.R. § 4.25. 38 C.F.R. § 4.71a, Diagnostic Codes 5235-43, Note (1). A rating under the latter formula is warranted where incapacitating episodes are present due to intervertebral disc syndrome (IVDS). An incapacitating episode is defined as a period of acute signs and symptoms due to IVDS that requires bed rest prescribed by a physician and treatment by a physician. 38 C.F.R. § 4.71a, Diagnostic Code 5243, Note (1). VA should then select whichever formula results in the higher evaluation.

Under the General Rating Formula for Diseases and Injuries of the Spine, disability ratings of 10, 20, 40, 50, 60, and 100 percent are authorized for thoracolumbar disability. 38 C.F.R. § 4.71a, Diagnostic Codes 5235-43. As the back disability has been rated as 20 percent disabling throughout the appeal period, the Board will limit its discussion to criteria providing for a higher rating. A 40 percent rating is warranted for forward flexion of the thoracolumbar spine of 30 degrees or less. And 40, 50, and 100 percent ratings are warranted for disorders manifested by ankylosis. Ankylosis is defined as “stiffening or fixation of a joint as the result of a disease process, with fibrous or bony union across the joint[.]” Dinsay v. Brown, 9 Vet. App. 79, 81 (1996). 

The normal combined range of motion of the thoracolumbar spine is 240 degrees with 90 degrees flexion, 30 degrees extension, 30 degrees each for left and for right lateral flexion, and 30 degrees each for left and for right rotation. See 38 C.F.R. § 4.71a, Diagnostic Codes 5235-43, Note (2); Plate V. 

Under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, a 40 percent rating is warranted for incapacitating episodes having a total duration of at least four weeks but less than six weeks during the past 12 months. A 60 percent rating is warranted for incapacitating episodes having a total duration of at least six weeks during the past 12 months.

When assessing the severity of a musculoskeletal disability that is rated based on limitation of motion, VA must consider the extent that a veteran may have additional functional impairment above and beyond the limitation of motion objectively demonstrated, such as during times when symptoms are most prevalent (“flare-ups”) due to the extent of pain (and painful motion), weakness, premature or excess fatigability, and incoordination. See DeLuca v. Brown, 8 Vet. App. 202, 204-7 (1995). Range of motion measurements should consider limitation during active as well as passive motion, and in weight-bearing and nonweight-bearing situations. Correia v. McDonald, 28 Vet. App. 158 (2016); 38 C.F.R. §§ 4.40, 4.45, 4.59. Although pain may cause functional loss, pain itself does not constitute functional loss. Rather, pain must affect some aspect of “the normal working movements of the body,” such as “excursion, strength, speed, coordination, and endurance,” in order to constitute functional loss. Mitchell v. Shinseki, 25 Vet. App. 32, 38-43 (2011) (quoting 38 C.F.R. § 4.40 ).

In this matter, the Veteran has provided lay evidence of significant pain on motion in the lower back region. He is competent to provide this evidence and the Board finds him credible. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). Indeed, the evidence dated since the early 2000s documents that the Veteran has used pain medication regularly to treat the pain, to include morphine and oxycodone. One VA examiner has even suggesting using methadone to treat back pain. However, a preponderance of the evidence indicates that a rating higher than 20 percent has not been warranted during the appeal period. The VA reports note the Veteran’s pain on motion, on active and passive motion and while weightbearing and not weight bearing. Further, certain reports note the Veteran’s complaints of experiencing flare ups due to activity. However, each of the VA examiners addressing this claim – in reports dated between June 2009 and January 2019 – found forward flexion of at least 50 degrees without functional limitation. Further, each of these reports indicates no ankylosis and no incapacitating episodes were found. Lastly, the private and VA treatment records do not indicate the presence of ankylosis or incapacitating episodes, or forward flexion functionally limited to 30 degrees or less. 

As such, throughout the appeal period, a preponderance of the evidence is against the assignment of a rating higher than 20 percent under either the General Rating Formula for Diseases and Injuries of the Spine or under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes. 38 C.F.R. § 4.71a, Diagnostic Codes 5235-43. As the preponderance of the evidence is against the claim, the reasonable doubt doctrine does not apply, and the claim must be denied. 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 4.3.

Bilateral Lower Extremity Radiculopathy

Lower extremity radiculopathy due to lumbar spine disability has been separately rated 10 percent disabling since the claims of entitlement to service connection on March 30, 2009. The Board will address whether higher initial ratings have been warranted since then. 

The RO rated the radiculopathy under DC 8720 of 38 C.F.R. § 4.124a. Thereunder, a 10 percent rating is warranted for mild incomplete paralysis, a 20 percent rating for moderate incomplete paralysis, a 40 percent rating for moderately severe incomplete paralysis, and a 60 percent rating for severe incomplete paralysis with marked muscular atrophy. An 80 percent rating is warranted for complete paralysis of the nerve resulting in a foot that dangles and drops, no active movement possible of muscles below the knee, flexion of the knee weakened or lost. When impairment is wholly sensory, the rating should be for the mild, or at most, the moderate degree. 38 C.F.R. § 4.124a.

The evidence in this matter indicates that the Veteran has experienced severe disability in his right lower extremity to such an extent that he has had “tremendous atrophy of his … right lower extremity in general.” Moreover, he has experienced disability in his left lower extremity as the result of left hip disability, which has been found service connected due to right foot disability. The Board also notes the Veteran’s lay assertions of record describing sharp, burning, shooting pain and numbness in his legs. See Jandreau, supra. And finally, the June 2009 VA report notes the Veteran’s complaints of painful radiculopathy. But the report indicates that the severity of the disorder could not be evaluated because the Veteran was then recovering from a recent right hip surgery which involved the influence of pain medication. 

In any event, a preponderance of the evidence indicates that, amid the severely disabling pain from back, foot, and hip disability, radicular symptoms have caused mild incomplete paralysis. The VA reports dated during the appeal period which specifically comment on the degree of impairment – in September 2010, September 2013, and January 2019 – specifically state that the radiculopathy from lumbar disability has caused mild incomplete paralysis. The findings are supported by examination results indicating normal to slightly impaired sensation in the lower extremities with normal reflexes. Lastly, the private and VA treatment records do not indicate radiculopathy more severe than what is noted in the VA examination reports. 

As such, throughout the appeal period, a preponderance of the evidence is against the assignment of initial ratings higher than 10 percent under DC 8720 of 38 C.F.R. § 4.124a for bilateral lower extremity radiculopathy. As the preponderance of the evidence is against the claim, the reasonable doubt doctrine does not apply, and the claim must be denied. 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 4.3.

 Left Wrist Disability

Left wrist disability has been service connected since April 1986. Since May 1999, the disorder has been rated 10 percent disabling. The Board will address whether a higher rating has been warranted at any time since March 30, 2008, one year prior to the claim for increased rating. 

The RO rated the Veteran’s wrist disability under the hyphenated DC 8515-5215 of 38 C.F.R. §§ 4.71a, 4.124a. See 38 C.F.R. § 4.20. Hyphenated DCs are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the basis for the evaluation assigned. 38 C.F.R. § 4.27. The Veteran has been compensated for orthopedic and neurological residuals from the in-service injury. 

Under DC 5215, a maximum rating of 10 percent is warranted for limitation of motion in the wrist. This DC will not lead to a higher rating, therefore. Higher ratings are authorized under DC 5214 for ankylosis in the wrist, but the evidence does not indicate ankylosis here. As such, a rating higher than 10 percent is only available for this disorder under DC 8515. Under DC 8515, impairment of the median nerve is addressed. For the minor extremity (the evidence demonstrates that the Veteran is right hand dominant), ratings of 10, 20, 40, and 60 percent are authorized. A 10 percent rating is warranted for mild incomplete paralysis, a 20 percent rating for moderate incomplete paralysis, a 40 percent rating for severe incomplete paralysis, and a 60 percent rating for complete paralysis. When impairment is wholly sensory, the rating should be for the mild, or at most, the moderate degree. 38 C.F.R. § 4.124a.

The evidence indicates that neuropathy in the left wrist from impairment of the median nerve in the form of CTS has caused mild incomplete paralysis. The VA reports dated during the appeal period which address the degree of impairment – in June 2009 and January 2019 – do not indicate that a more severe form of incomplete paralysis has been manifested here. The June 2009 VA report notes the Veteran’s complaints of pain and numbness but also noted that recovery from hip surgery, and the need to use a walker to ambulate, placed stress on the left wrist. The January 2019 VA report specifically states that, although the Veteran clearly has CTS, the disorder has caused mild incomplete paralysis. The finding is supported by the January 2019 examination results indicating only decreased sensory impairment in the left hand, normal or slightly impaired muscle strength in the left arm without evidence of atrophy, and normal reflexes. Lastly, the private and VA treatment records do not indicate left arm neuropathy more severe than mild incomplete paralysis. 

As such, throughout the appeal period, a preponderance of the evidence is against the assignment of a disability rating higher than 10 percent for left arm CTS under DC 8515 of 38 C.F.R. § 4.124a. As the preponderance of the evidence is against the claim, the reasonable doubt doctrine does not apply, and the claim must be denied. 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 4.3.

The January 2019 VA examiner also diagnosed the Veteran with left ulnar neuropathy due to the in-service wrist injury. The issue has been referred to the RO for development. Nevertheless, inasmuch as symptoms from ulnar nerve neuropathy have not been differentiated from median nerve neuropathy in the medical evidence, the Board has considered all left upper extremity neuropathy in rating the issue on appeal. See Mittleider, supra. 

 SMC for Loss of Use of the Left Extremity 

With regard to the left lower extremity, the Veteran is service connected for radiculopathy rated 10 percent disabling, left hip avascular necrosis rated 10 percent disabling, and limitation of motion in the left hip rated 0 percent disabling. He claims entitlement to SMC based on these disabilities. 

Special monthly compensation is available when, as the result of service-connected disability, a veteran suffers additional hardships above and beyond those contemplated by VA’s schedule for rating disabilities. See 38 U.S.C. § 1114; 38 C.F.R. §§ 3.350, 3.352. The rate of SMC varies according to the nature of a veteran’s service-connected disabilities. Basic levels of SMC are listed at 38 U.S.C. § 1114(k). Higher levels of SMC are provided at 38 U.S.C. § 1114(l), (m), (n), and (o).

Special monthly compensation under 38 U.S.C. § 1114(k) is payable for each anatomical loss or loss of use of one foot. 38 C.F.R. § 3.350(a). Loss of use of a foot will be held to exist when no effective function remains other than that which would be equally well served by an amputation stump at the site of election below knee with use of a suitable prosthetic appliance. The determination will be made on the basis of the actual remaining function, whether the acts of balance, propulsion, etc., in the case of the foot, could be accomplished equally well by an amputation stump with prosthesis. 38 C.F.R. § 3.350(a)(2)(i).

In this matter, a preponderance of the evidence is against finding that SMC is due for loss of use of the left extremity (i.e., foot). 

As noted earlier, the Veteran is severely disabled by several service-connected disabilities stemming from the in-service crush injury to the right foot. He has received SMC under subsection (k) of 38 U.S.C. § 1114 for loss of use of the right foot. And while right foot disability caused left hip disability and back disability involving radiculopathy, the evidence clearly shows that the Veteran has retained not only the full use of his left foot, but also the full use of his left lower extremity. None of the VA reports dated since March 2009 (in June 2009, January 2010, September 2010, June 2011, September 2013, and January 2019) indicates loss of use in the left foot. In fact, as detailed further below, the January 2019 examiner specifically addressed the claims for SMC addressed here and found limited disability in the entire left lower extremity. Moreover, VA and private treatment records are similarly negative for such disability. There is evidence indicating that radicular pain and left hip disability have decreased the overall effective functioning of the left leg. This evidence certainly shows decreased effective functioning. But it does not indicate the absence of effective remaining function in the left foot, as would be necessary to grant entitlement to SMC based on the loss of use of the foot.

As such, a preponderance of the evidence is against the claim of entitlement to SMC under subsection (k) of 38 U.S.C. § 1114 for disability in the left lower extremity. As the preponderance of the evidence is against the claim, the reasonable doubt doctrine does not apply, and the claim must be denied. 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 4.3. 

 SMC Based on the Need of Regular Aid and Attendance

The Veteran is service connected for right hip disability as 90 percent disabling, posttraumatic stress disorder (PTSD) as 70 percent disabling, right foot disability as 40 percent disabling, lower back disability as 20 percent disabling, left wrist disability, bilateral radiculopathy, and left hip disability as 10 percent disabling, and, as 0 percent disabling, erectile dysfunction, limitation of motion in the left hip, and scar tissue on the foot. A TDIU has been in effect since October 2000, a combined disability rating of 100 percent has been in effect since April 2009, and SMC under subsections (k) and (s) of 38 U.S.C. § 1114 has been in effect since April 2009. 

The Veteran asserts that his multiple service-connected disabilities have rendered him so helpless that he is entitled to additional SMC based on his need of regular aid and attendance of another person. 

Under 38 U.S.C. § 1114(l), SMC is payable when a Veteran due to service-connected disability is permanently bedridden, blind or with visual acuity of 5/200 or less in both eyes, or is in need of regular aid and attendance. 38 U.S.C. § 1114(l); 38 C.F.R. § 3.350(b).

The Veteran does not assert, and the evidence does not indicate, that he is bedridden or blind. His claim is based on his assertion that service-connected disability has rendered him so helpless that he has been in need of regular aid and attendance from another individual. The following factors will be accorded consideration in determining whether the Veteran is in need of regular aid and attendance of another person: (1) inability of the Veteran to dress or undress himself, or to keep himself ordinarily clean and presentable; (2) frequent need of adjustment of any special prosthetic or orthopedic appliances which by reason of the particular disability cannot be done without such aid; (3) inability of the Veteran to feed himself because of the loss of coordination of upper extremities or because of extreme weakness; (4) inability to attend to the wants of nature; or (5) physical or mental incapacity which requires care or assistance on a regular basis to protect the Veteran from the hazards or dangers incident to his daily environment. 38 C.F.R. § 3.352(a). 

It is not required that all of the disabling conditions enumerated in 38 C.F.R. § 3.352(a) be found to exist before a favorable rating may be made. The particular personal functions that the Veteran is unable to perform should be considered in connection with his condition as a whole. It is only necessary that the evidence establish that the Veteran is so helpless as to need regular aid and attendance not that there is a constant need for aid and attendance. Id.; see also Turco v. Brown, 9 Vet. App. 222, 224 (1996).

The evidence in this matter indicates that the Veteran, despite his service-connected disability, has functioned independently throughout the appeal period without the need of the regular aid and attendance of another individual. 

A January 2019 VA report specifically addresses this claim. The report notes the in-service accident and consequent foot injury, and the eventual development of severe right hip disability. The report notes the multiple hip surgeries and the prosthetic hip. The report notes that the Veteran needed a “cane to walk and has a right shoe which is built up 5 inches.” The examiner found that the Veteran was “[u]nable to do long periods of movement, walking, or standing and inability to perform repetitive lifting or weight bearing motions” and could not do any “heavy lifting.” The examiner noted upper extremity neuropathy and weakness in the hands. Moreover, the examiner noted the severe disability throughout the right lower extremity to include limited motion, weakness, muscle atrophy, and walking difficulty due to right hip surgeries and replacement. 

But the examiner found the right lower extremity without contractures, complete paralysis, lack of coordination, weight bearing deficits, balance deficits, or propulsion deficits. The examiner found the left lower extremity fully functional with limited disability. The examiner found that the Veteran was not hospitalized and was not restricted to his home or its immediate vicinity. The examiner found that on “a typical day” the Veteran “can come and go as he pleases” and “is able to leave home whenever he want[s].” The examiner noted that the Veteran did not need an attendant in reporting for the examination and noted that the Veteran traveled to the appointment in an automobile. The examiner noted that the Veteran did not report dizziness, loss of memory, or poor balance, and found that he was able to perform self-care skills such as “feeding, dressing and undressing, bathing, grooming, toileting, etc.” And the examiner noted that, although the Veteran’s ability to walk was severely impacted by his right foot and hip disability to such an extent that he needed a cane to walk, he was nevertheless able to walk without the assistance of another person. 

In short, the January 2019 VA report’s findings indicate that none of the criteria listed under 38 C.F.R. § 3.352(a) are met. The report indicates that the Veteran has not been so helpless as to need regular aid and attendance of another person. 

Moreover, and most persuasive in this matter, VA and private treatment records dated between 2008 and 2017 have indicated that the Veteran has been independent despite his service-connected disability. These records generally show that the Veteran has not needed assistance for bathing, dressing, toileting, feeding, transfer in and out of bed, using the telephone, shopping, preparing food, housekeeping, doing laundry, traveling, taking medications, and managing his finances. These records generally indicate that the Veteran has not had problems caring for himself at home. 

The Veteran is competent to offer lay evidence describing limitations associated with his severe disabilities. What he describes is observable. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). Further, the Veteran’s impairments are well documented. He experienced a traumatic injury during service which has rendered him unemployable since 2000. However, on the narrow issue before the Board, an award of SMC cannot be granted. The medical evidence in VA examination reports and in treatment records provided by treating VA medical professionals over a 12-year period is more reliable on the question of whether the Veteran has been so helpless to be in need of regular aid and attendance. See Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007). This evidence is consistent, with rare exceptions, in indicating that service-connected disability has not rendered him incapable of functioning independently. 

For this reason, the preponderance of the evidence is against the claim of entitlement to SMC based on the need for regular aid and attendance of another individual. See Gilbert and Alemany, both supra. As the preponderance of the evidence is against the claim, the reasonable doubt doctrine does not apply, and the claim must be denied. 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 4.3. 

 

 

G. A. WASIK

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Christopher McEntee, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.